Larkin, J.
This appeal raises the issue of whether the trial judge was correct in allowing a defendant’s motion for summaryjudgment in the context of a dispute over the amount owed for printing services to the legal profession.
Plaintiff brought an action of contract and for alleged violation of G.L.c. 93A seeking to recover money damages stemming from the defendant’s refusal to pay for typesetting services furnished by the plaintiff. In his answer, defendant denied any breach of contract and similarly denied any putative 93A violations. In addition, in his answer the defendant raised the defenses of accord and satisfaction and release. Following the completion of the pleadings and some pre-trial discovery, the defendant moved for summaryjudgment pursuant to Rule 56, M.R.C.P. Following argument, the trial judge allowed defendant’s motion for summaryjudgment. Again, it is the allowance of that motion which grounds the instant appeal.
The record shows that in July of 1979 the defendant requested the typesetting services of the plaintiff relative to a proposed book on Civil Procedure in the District Courts of Massachusetts. The plaintiff agreed to provide such services. In the interim period between July of 1979 and June of 1981, the plaintiff submitted bills to the defendant totalling $5,629.30 which the defendant paid in full. In June of 1981, the plaintiff submitted a final bill totalling $5,868.35. The defendant apparently disagreed with the amount of this bill and so informed the plaintiff. On June 23, 1981, the plaintiff and defendant met to discuss the dispute over the amount actually owed and apparently the amount that would be required to settle the developing controversy.
What the parties actually understood as to these matters and whether they had come to a meeting of the minds on the settlement issue has emerged as a sharply contested question which lurks the surface of the validity of the grant of summaryjudgment by the trial judge. Another issue, inextricably bound up with the foregoing, is whether the plaintiffs claim was barred because, following the above-cited meeting, the plaintiff accepted and negotiated a check marked “payment in full” incident to what the defendant asserts was a “negotiated settlement” in the context of a “disputed claim.”
The thrust and chronology of the parties competing positions may, perhaps, best be explored from an examihation of the affidavits submitted by each party as a part of the duly mandated summaryjudgment requirements of Rule 56, M.R.C.P.
In suport of his motion, J. Edward Pawlick, president and publisher of the defendant, filed the following duly attested affidavit:
1.1 am the owner of Lawyers Weekly Publications, 30 Court Square, Boston, Massachusetts.
2.1 have been in the newspaper, book and newsletter business since 1972 and have purchased hundreds of thousands of dollars of typesetting and printing during that time.
3. The plaintiff was hired to do the typesetting for a book on Civil Procedure in the District Courts of Massachusetts.
*185 4. The plaintiff submitted interim bills to us totalling $5,629.30 which we paid in full.
5. The plaintiff submitted a final bill of $5,868.35 which I believed to be too high for the services rendered and I so informed the plaintiff.
6.1 believed that less than $1,500.00 was the actual amount owed.
7. The plaintiff and I had a meeting on June 23, 1981 in which we agreed that the settlement amount of $5,000.00 was to include any previously unrecorded payments made by the defendant to the plaintiff.
8. There were two unrecorded payments sent to the plaintiff totalling $2,960.20.
9.1 sent a check for $2,039.80 to the defendant which represented the difference between the $5,000.00 or settlement figure and the unrecorded payments of $2,960.20.
10.1endorsed the reverse side of this check marking it ‘payment in full’
11. The plaintiff obliterated the endorsement and cashed the check.
In opposition to the motion for summary judgment, James J. Reidy, president of the plaintiff corporation, filed the following equally attested affidavit:
1. The plaintiff, from July, 1979 through April, 1981, furnished typesetting and other services to the defendant.
2. The plaintiff at various times submitted invoices to the defendant and these invoices total $11,614.21.
3. The plaintiff has been paid to date by the defendant an amount of $7,785.61, but the defendant has refused and continues to refuse to pay the remaining balance of $3,828.60.
4. On June 23,1981,1 met with the defendant in Boston to discuss his outstanding balance which then stood at $5,868.35, and it was agreed between the defendant and myself that he would pay $5,000.00 in final settlement of his then current indebtedness.
5. A short time after this meeting, I received a check from the defendant for an amount of $2,039.80, but which contained an endorsement on its back to the effect that ‘deposit of this check is an acknowledgment that this is payment in full of all indebtedness owed to County Photo Compositing Corporation by Mass. Lawyers Weekly.’
6. Along with this check, I received a letter from the defendant, a copy of which is attached to this affidavit and marked ‘Exhibit A.’
7.1 gave instructions to my bookkeeper to delete this endorsement and to deposit this check, which he did. I then sent a letter to the defendant, a copy of which is attached to this affidavit and marked ‘Exhibit B.’
8. I never agreed with the defendant that we would accept $5,000.00 as the total bill for all work done from the very beginning of the book, less payments already made by the defendant.
9.1 did not leave the defendant’s office while he went to check on payments made to date, as the defendant infers in his affidavit and in other pleadings. Instead, the defendant and I terminated our meeting on June 23, 1981, when we agreed that I would accept $5,000.00 towards full settlement of the then remaining indebtedness, which stood at $5,868.35. This was not a disputed amount. There was no agreement as to any credits to be applied to this $5,000.00.
*186 10. The defendant never admitted to me that he owed the plaintiff only $1,500.00.
11. On July 21,1979, the defendant was billed $630.00, and he paid this on September 10,1979. On November 8,1979, January 10,1980 and January 30, 1980, the defendant was billed a total of $2,446.71, and on March 14, 1980, he paid this amount in full. The final bill of $5,868.35 was for work performed for the defendant subsequent to the July 1, 1980 billing, and did not include amounts which were previously billed to the defendant, (see copy of plaintiffs ledger card attached.
The letter from the plaintiff to the defendant which is referenced in paragraph 7 of the above cited affidavit is as follows:
Mr. Ed Pawlick
Massachusetts Lawyers’ Weekly
30 Court Square
Boston, Ma 02108
Dear Ed:
Thank you very much for your recent check in the amount of $2,039.80: Be advised, however, that we are contesting this as being indicative of payment in full for your outstanding balance. Our records show a remaining balance due of $3,828.55.
My verbal offer for full settlement as stated in our meeting on Tuesday, June 23 was that we would accept a $700.00 or $800.00 discount on your part as pertaining to the current balance due at that time of $5,868.35.
In no way did I imply or mean to imply that the entire project had cost $5,000.00 as you appear to have interpreted in my offer.
Regardless, my offer of an $800.00 discount in return for immediate and full payment of the outstanding balance provided full and final payment in the amount of $3,028.55 is made on or before July 18.
Please let me know of your intentions at your earliest convenience.
With this as a factual backdrop and procedural context, we turn to the question of the correctness of the trial judge’s decision to grant summary judgment to the defendant.
Rule 56 of the Massachusetts Rules of Civil Procedure provides for summary judgment when there is no genuine issue of material fact. As two leading commentators on the rule have noted: “The rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief either as to all or part of the issues where the facts set forth in detail in affidavits, depositions, answers to interrogatories and admissions on file show there are no genuine issues of material fact to be tried.” See McCarthy and Cronin, Summary Judgment in Massachusetts, Mass. Law Rev. 61 (1982).[2]
*187 There is no question that, in the appropriate case, the availability of summaryjudgment is highly salutary for the cause of effective and efficient judicial administration in disposing of cases devoid of genuine factual controversy. Indeed, from the outset, the Supreme Judicial Court has strongly implied that pervasive invocation of the summaryjudgment device should not be chilled by unwarranted judicial inhospitality or timidity.
In Community National Bank v. Dawes, 369 Mass. at 660 (1976) the case which gave the Court its first opportunity to “express” its “thoughts on Rule 56,” the Court warmly placed its imprimatur on the use of summaryjudgment by trial judges. Thus, Chief Hennessey writing for the Court stated:
We view Rule 56 as a welcome, progressive addition to judicial procedure in this Commonwealth. ‘It creates an excellent device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ 3 W.W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE & PROCEDURE (Rules Edition) † 1231, at 96 (Wright rev. ed. 1958). 369 Mass. at 553
As suggested above, the premise of the summaryjudgment procedure is that there is no disputed issue requiring an evidentiary hearing for resolution. Accordingly, a trial may be dispensed with. However, whether there does exist a real dispute concerning the operative “salient facts” is frequently a difficult and elusive question. It is always the dispositive question for the trial judge in deciding whether to grant or deny the motion for summaryjudgment in the first instance. And, it is no less difficult for a reviewing court in assaying the propriety of the trial court’s action, where, as in the instant case, that action is challenged on appeal.
In assaying the criteria of whether a fact issue is genuinely disputed, a number of considerations are relevant. Since the basic postulate of the summary judgment procedure is that there is an absence of a contested dispute and cognate evidentiary issues, thus, obviating the need for an evidentiary hearing, the first step in any analysis of the aptness of the invocation of the summary judgment process is to determine whether a factual issue exists. That determination, sequentially, involves two questions:
(1) is there a fact issue appropriate for trial and
(2) is that issue material?
As noted above, the decisive determination under Rule 56 is the presence or absence of an issue of material fact, but any definition of what constitutes a “fact” is conspicuously absent from the rule. Perhaps this is not suprrising since, for over three centuries, judges have sought to wrestle with this question without arriving at a totally satisfying answer.[3] As the Supreme Court stated in Pullman-Standard v. Swint, 456 U.S. 273, (1981):
The Court has previously noted the vexing nature of the distinction between questions of fact and questions of law ... Nor do we yet know of any. . . rule or pinciple that will unerringly distinguish a factual finding from a legal conclusion. 456 U.S. at 288.
Since a judge looks in vain for any guidance on this question in the summary judgment cases, it would appear that he is unfettered in approaching the issue *188 analytically and pragmatically. See, e.g., United States v. J.B. Williams Company, Inc., 498 F.2d 414, 430-31 (2d Cir. 1974); Nunez v. Superior Oil Co., 572 F.2d 1119, 1126 (5th Cir. 1978). '
Dictionaries generally define a fact as a thing done, an action performed, or an event or occurrence.[4] Accordingly, it would appear safe to say that a controversy over whether an event occurred, what occurred at that event, whether a particular thing was done at the event (or, for present pertinent purposes) was “agreed upon” at the event, would seem to present preeminently issues of fact.[5]
Such facts, frequently called “historical facts” in the cases, where contested, are presumptively issue generating factors which should be left for decision at trial, especially where the resolution of these issues implicates witness credibility or demeanor. Intent, motives, states of mind are common examples of “historical facts,” although usually such facts can only be proved from inference rather than from testimony of direct observation.
It is clear that when a controversy over historical facts or inferences generates issues relating to the weight or credibility of testimony,[6] the party opposing the motion should be accorded the opportunity to confront and cross-examine witnesses at trial since the trial judge must inevitably consider their demeanor and credibility in finding facts. In that situation, a trial is mandated. See, e.g., Anthony v. Petroleum Helicopters, Inc., 693 F.2d 495, 497 (5th Cir. 1982); Beckham v. Safeco Ins. Co. of America, 691 F.2d 898 (9th Cir. 1982); Scharf v. United States 597 F.2d 1240, 1243 (9th Cir. 1979); National Aviation Underwriters v. Altus Flying Service Inc., 555 F.2d 778, 784 (10th Cir. 1977). (For some interesting theoretical underpinings for the right of confrontation, relevant to this area, see WIGMORE, EVIDENCE, † 1395).[7]
*189 However, when all material or “salient” (see, Community National Bank v. Dawes, supra) facts are before the trial judge on the motion for summary judgment and the parties, while urging divergent and conflicting ultimate facts or conclusions have no realistic evidentiary dispute, it can be argued that requiring a trial is a hecatomb to formality if not futility. In short, where the dispute is solely over ultimate facts, a trial usually adds nothing to a case, especially where, as in the usual district court case, the judge is the sole trier of fact.[8]
We turn then to the question of “materiality” and this may be succinctly summarized. For purposes of Rule 56, an issue is material if its resolution is outcome determinative. Quite simply, a controversy concerning the presence or absence, existence or non-existence, of a fact or an inference is material in a particular context if it makes a difference in the final decision. Obviously, materiality is a relative and changeable factor because whether an issue is material is a variable function of the law and facts of the particular case.
What Justice Holmes said of “words” is equally true of the concept of “materiality:”
A word is not a crystal, transparent and unchanged, it is the skin of a living thought, and may vary greatly in color and content according to the circumstances and time in which it is used. Towne v. Eisner, 245 U.S. 425 (1918).
Thus, in addressing considerations of materiality on motion for summary judgment, the trial judge’s task, quite simply, is to decide whether the resolution of any controverted issue is essential to the outcome of the proceedings. See, e.g., Angel v. Seattle First Nat. Bank, supra; Barker v. Norman, 651 F.2d 1107, 1133 (5th cir. 1981); Standard Oil Co. v. Dept. of Energy, 596 F.2d 1029, 1065. An issue is not material simply because it may have the capacity of affecting the outcome of a proceeding. It is material only when disputed factual issues are logically integral to the issues raised on the motion for summary judgment and, accordingly, must inevitably be decided. See, e.g., Estate of Wenzel v. Seaward Marine Services, Inc., 709 F.2d 1326 (9th Cir. 1983).
In this case, we believe that reasonable persons surely could differ on the radiations of the record. We cannot say that the record, in terms of factual analysis, is such that it can yield but one single and ineluctable conclusion— the indispensable sine qua non of the summary judgment process.
It is the essence of defendant’s legal argument that the plaintiffs instant claim is barred under generally accepted notions of accord and satisfaction. In Massachusetts, in a “disputed claim” context, where the plaintiff accepted and *190 negotiated a check marked “payment in full,” (notwithstanding his attempt to obliterate this language), following what defendant styles “a negotiated settlement,” any residual elements of plaintiffs underlying claim are extinguished, in the view of defendant.
It is agreed that the state of the law in this area in Massachusetts appears settled. In their respective briefs, both sides, citing with approval, set forth the following excerpt from Volume 14 of the MASSACHUSETTS PRACTICE SERIES (at † 285), as an accurate conspectus of the relevant and guiding legal principles for a case similar to the one presented here:
If the check is for less than an admitted indebtedness, the creditor may collect and recover the balance of the debt. If there is an admitted indebtedness and a disputed claim, and the check is for the amount that is admitted to be due, the creditor may disregard the condition and cash the check without relinquishing his claim as to the amount in dispute. But if the claim is a disputed claim, or if there is a dispute'as to part of the claim, and the check is for an amount greater than admitted by the debtor, the creditor may not collect the check and recover for the balance of the claim; if he uses the check, he does so subject to the conditon that it is accepted in full settlement.
As frequently happens, the articulation of abstract principles of law is far easier than their application to a concrete factual situation especially, as here, where there are such sharply divergent accounts of what occurred at the critical and determinative meeting of the parties to discuss payment of the bill for the printing.
It is clear that the decisive factor in analyzing the present record is to attempt to discern what took place at the meeting between the parties on June 23, 1981. What, if anything, the parties agreed upon at this meeting and whether there was a meeting of the minds on a “negotiated settlement” is not at all clear from the record.
According to the defendant’s affidavit “the plaintiff and I had a meeting on J une 23,1981 in which we agreed that the settlement amount of $5,000.00 was to include any previously ‘unrecorded’ payments made by the defendant to the plaintiff.”
The plaintiff also acknowledges that the “agreed” figure that he was to accept in payment was $5,000.00. However, from the plaintiffs perspective, the genesis of this figure was sharply in dispute. It is plaintiffs position that the only thing he “agreed” to, and, indeed the only serious subject of discussion at this meeting was his proffered offer to slightly “discount” what he perceived to be a completely documented and undisputed balance owed by the defendant of $5,868.35. It is the essence of plaintiffs position that there was, in effect, no disputed claim as to this amount, at least, in the “accord and satisfaction” sense, supra.
It is the equally clear thrust of plaintiffs affidavit that there were no discussions looking towards additional (and open-ended) credits for “unrecorded” payments because, in plaintiffs view, there were not unrecorded payments; rather, all payments which had been received by the defendant had been meticulously posted to relevant accounts. Thus, he avers in his affidavit:
8. I never agreed with the defendant that we would accept $5,000.00 as the total bill for all work done from the very beginning of the book, less payments already made by the defendant.” (emphasis supplied)
*191 9.1 .did not leave the defendant’s office while he went to check on payments made to date, as the defendant infers in his affidavit and in other pleadings. Instead the defendant and I terminated our meeting on June 23, 1981, when we agreed that I would accept $5,000.00 toward full settlement of the then remaining indebtedness which stood at $5,868.35. This was not a disputed amount. There was no agreement as to any- credits-to be - applied to this $5,000.00,” (emphasis supplied)
10. The defendent never (asserted) to me that he owed (me) only $1,500.00.
Indeed, on this point, the position set forth in plaintiffs affidavit is completely consistent with that contained in the letter which the plaintiff dispatched to the defendant almost immediately upon receipt of the plaintiffs check for the significantly lesser amount of $2,039.80. Thus he wrote:
My verbal offer for full settlement as stated in our meeting on Tuesday, June 23 was that we would accept a $700.00 or $800.00 discount on your part as pertaining to the current balance due at that time of $5,868.35.
In no way did I imply or mean to imply that the entire project had cost $5,000.00 as you appear to have interpreted my offer.
It is obvious that a review of the affidavits and submissions compels the conclusion that there is a sharp dispute over whether a “disputed claim” — the “triggering mechanism” for the invocation of accord and satisfaction principles, and a highly “material” element of this proceeding, was present on this record. This is obviously significant because, for the defendant to have properly prevailed on his motion for summary judgment, it was incumbent on him to demonstrate that it was uncontroverted that the obligation was, indeed, a “disputed claim,” and that the proffered check of $2,039.80 was “greater” than the amount admitted by the debtor.[9] However, from a review of the pleadings, affidavits, and other submissions, it appears that these points are sharply contested and, as a minimum that a genuine issue as to a material fact is clearly in dispute.
Both in its brief and at oral argument defendant has relied heavily on the relatively recent Appeals Court decision in Wong v. Paisner, 14 Mass. App. 923 (1982). There, as here, the issue was whether the receipt and acceptance of a lesser payment, in a disputed claim case, worked an accord and satisfaction to extinguish an underlying obligation. There the Appeals Court held that the trial court erred in refusing the defendant’s requested instruction on accord and satisfaction.
In Wong, the case was tried to a jury, and the critical instructional deficiency, according to the Appeals Court, was the trial judge’s refusal to instruct the jury on the defense of accord and satisfaction. In that case, as here, the plaintiff, prior to cashing a check, had deleted the words “payment in full.” However, in our view, the rationale of the Court in reaching its decision *192 has compelling relevance against the present defendant’s position oh the propriety of the grant of summaryjudgment in favor of the defendant in the instant case. Thus, the Court wrote:
It is settled that acceptance and deposit of a check offered in full payment of a disputed claim constituted an accord and satisfaction and bars an attempt to collect any balance under a contract (citing cases). (But, j Whether an accord and satisfaction has been proved is a question of fact on which the defendant has the Burden of proof. . . The action of theplaintiff in deleting the words, ‘payment in full’ did not establish, as a matter of law, that there was no accord and satisfaction (citing WILLISTON ON CONTRACTS). Therefore the defendant adequately raised the issue of accord and satisfaction, and the matter should have been dealt with by the judge in his instructions to the jury, (citing cases) (emphasis supplied).
We believe that the excerpted and emphasized language makes clear that whether an accord and satisfaction has been established in a particular commercial context is preeminently a question of fact. On this record, as in the Wong case, where the antecedent prior dealings and discussions of the parties are so sharply contested and subject to such divergent interpretations, it is clear that the resolution of these factual questions must be dealt with on the basis of a more fully developed record than was before the Court on the motion for summaryjudgment. Here, again, as a minimum, we believe that the plaintiff “adequately raised” questions of whether, “as a matter of law .. . there was .. . (an) accord and satisfaction.” Wong, Supra. Quite simply, in Wong, the Appeals Court believed that reasonable men could differ on whether the putative accord and satisfaction had the liability extinguishing ramifications there sought to be asserted and, since reasonable men could differ, this was something which was a fit subject for a jury to have before it under properly formulated and articulated instructions. So too here, we believe that reasonable men may differ as to the putative potencies of the asserted accord and satisfaction. And for ultimate resolution of this issue what is needed is a more fully developed record than is the natural concomitant of the truncated and delimited papers deriving from the instant grant of summaryjudgment to the defendant.
In short, we believe that this record clearly presents a disputed issue requiring an evidentiary hearing for resolution. Since the parties have such sharply divergent accounts of what took place at the critical meeting of June 23,1981, then this surely presents a classic situation where the resolution of the determinative and threshold question — whether the parties understood that they were dealing with a claim, the substance of which was in dispute as opposed to an acknowledged and documented debt which was to be slightly “discounted” — conspicuously implicates witness credibility and demeanor. Since there is this implication of witness credibility generating, in turn, cognate issues relating to weight and credibility of testimony, the present plaintiff who opposes the notion that a valid accord and satisfaction obtains as a “matter of law” on this record, should be accorded the opportunity to confront and cross-examine witnesses at trial. Anthony v. Petroleum Helicopters, supra; Beckham v. Safeco Ins. Co. of America, supra.
In sum, again, we do not believe that the record is adequately developed for a proper resolution of the issues here. At bottom, we believe that a trial would indeed add “something” to this case and that the grant of defendant’s motion *193 for summary judgment was premature and constituted error. Accordingly, the action of the trial judge in granting defendant’s motion for summary judgment is set aside and the case is to be returned to the trial court for further proceedings not inconsistent with this opinion.

 Prior to the adoption of the Rules, on July 1,1971, there was no generally available procedural device for resolving essentially undisputed cases. Interestingly, the only available statutory precursors of Rule 56 existed solely for district court practice. Section 59 of Chapter 231 of the General Laws allowed a litigant to seek immediate entry of judgment upon the submission of an affidavit that, in counsel’s belief, there existed only a question of law and no issue of material fact. However, this device was of limited utility because the other party could immediately file a counteraffidavit and effectively block the immediate entry of judgment. A like statute, G.L. c. 231, t 59b, essentially a debt collection device, allowed a plaintiff seeking recovery of a debt or “liquidated demand” to file an affidavit verifying the cause of action and seek immediate entry of judgment. Both of these practices were terminated with the adoption of the Massachusetts Rules of Civil Procedure on July 1, 1974. (1975 Mass. Acts c. 377, t 87, repealed G.L. c. 231, t 59; 1975 Mass. Acts c. 377, t 87, repealed G.L. c. 231, † 59b). See, McCarthy and Cronin, supra at 61.

See Farley, Instructions to Juries - Their Role in the Judicial Process, 42 Yale L.J. 194, 198-99 (1932)

See, e.g., WEBSTER’S THIRD INTERNATIONAL DICTIONARY: BLACK’S LAW DICTIONARY. In WEBSTER’S, supra, the definition of fact includes "an ocurrence, quality, or relation the reality of which is manifest in experience or may be inferred with certainty.” See pg. 813.

Of course to suggest that in the wide spectrum of issues which may lurk the surface of a lawsuit every question falls on one side or the other of a “bright-line” fact/law dichotomy is to espouse simplistic solutions elevating labels over principle and policy. See Artvale, Inc. v. Rubgy Fabrics Co., 363 F.2d 1002, 1005 (2d Cir. 1966); United States v. J.B. Williams Company, Inc., supra; Nunez v. Superior Oil Co., supra; 5A MOORE’S FEDERAL PRACTICE † 41.05 (1).

This in contrast to a situation where: “There was conflict concerning interpretation of the facts and the ultimate conclusions to be drawn from them.... But there was none as to the facts themselves. In other words, the evidentiary facts were not substantially in dispute ... Conflict concerning the ultimate and decisive conclusion to be drawn from undisputed facts does not prevent rendition of a summaryjudgment, when that conclusion is one to be drawn by the Court. The Court had before it all the facts which formal trial would have produced. Going through the motions of trial would have been futile.” Fox v. Johnson & Wimsatt, Inc., 127 F.2d 729, 736-37 (D.C. Cir.1942). (emphasis supplied)

Wigmore asserts that the basis of the confrontation rule rests on two distinct conceptual notions: (1) to provide the opponent with the opportunity to cross-examine adverse witnesses and (2) to enable the trier of fact to assess the testimony on the basis of the witness’ demeanor.

This is conspicuously true in a case where the predicate of the motion is bottomed on the legal insufficiency of the factual demonstration of the party having the burden of proof, and is not predicated on facts offered by the moving party. See, e.g., Angel v. Seattle First Nat. Bank, 653 F.2d 1293, 1300 (9th Cir. 1981). But, whatever a party’s strategic focus, a party opposing a motion for summary judgment, when all material facts are before the judge, has the ability to effectively counter the moving party’s showing not only by its own affidavits but by depositions of movant’s affidavits, as well as by other discovery, all of which maybe submitted as a part of the opposition. See, e.g., Lundeen v. Cordner, 354 F.2d 401, 408 (8th Cir. 1966); subseq. opinion 356 F.2d 169, 170 (8th Cir. 1966).

It is true that defendant takes the position that it “believed that the actual amount owed was less than $1,500.00” (Defendant’s affidavit, para. 6). This “belief" is sharply contested by the plaintiff who denies that defendant ever took the position (prior to the receipt of the subject check) that he only owed $1,500.00. Rather plaintiff asserts that the discussions and, according to plaintiff, the discussions at the determinative June 23, 1981 meeting centered on the bill for $5,868.35 which, again, according to plaintiff, was fully substantiated, abundantly documented and meticuously reflected in relevant records.