**Thomas F. LASH, Plaintiff,**

v.

**BALLARD CONSTRUCTION CO., a corporation; and Tri–State Construction, Inc., a corporation, Defendants.**

**No. C88–771M.**

United States District Court,
W.D. Washington,
at Seattle.

Jan. 23, 1989.

Shannon Stafford, Stafford, Frey & Mertel, Seattle, Wash., for plaintiff.

David Tewell, Tewell, Thorpe & Findlay, Inc., Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, Seattle, Wash., for Ballard Const. Co.

David L. Ashbaugh, Stanislaw, Ashbaugh, Chism, Jacobson & Riper, Seattle, Wash., for Tri–State Const., Inc.

## ORDER GRANTING DEFENDANT BALLARD'S MOTION FOR SUMMARY JUDGMENT

McGOVERN, District Judge.

### ISSUE

The parties agree that the issue before the Court is whether the injury to Plaintiff Thomas Lash, which occurred during the course and scope of his employment, occurred upon a "vessel" within the meaning of 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA).

### FACTUAL BACKGROUND

The following facts are established by affidavits and are not in dispute. Thomas F. Lash was employed by Defendant Ballard Construction Co. on March 8, 1988. He was working on dredging an underwater trench near Pier 53 for a storm sewer outfall pipe to be installed through the Madison Street/Pier 53 sea wall. The actual dredging was done by a piece of equipment with a clamshell shovel. The dredging equipment was placed upon a unit described variously as a "work platform" and a "derrick barge." This unit was designed and built exclusively by employees of Ballard Construction solely for use at the Pier 53 construction site.

The unit measures 9′ × 18′ and consists primarily of 12″ × 12″ timbers bolted together forming an outside frame with styrofoam within to provide buoyancy. Laid across the 12″ × 12″ timbers are other timbers to provide a platform.

The unit has no motive power, but was positioned around the pier by use of skiffs or pike poles. It has no towing cleats, no raked bow, no skeg nor keel, and no running lights.

There are six handmade cleats made from cut and welded rebar for use in securing the unit to the work area.

Aside from positioning the unit around the pier by use of a skiff or pike poles, the unit was moved daily from the Pier 53 worksite to the moorage site at Pier 48. The trips, made with one person aboard, were timed to yield to commuter ferries, whose paths had to be crossed, and hand held flashlights were used as running lights during trips made after sundown.

### APPLICABLE LAW

(1) *Availability of Summary Judgment on Vessel Issue*

Summary judgment has been found proper concerning a question of "seaman's status" where the result turned on the question of whether or not there was a "vessel":

> Summary judgment is proper on the question of seaman status where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test.

*Bernard v. Binnings Const. Co., Inc.,* 741 F.2d 824, 828 (Fifth Cir.1984). While the *Bernard* Court acknowledges that only in rare circumstances should the issue of seaman status be taken from the trier of fact, the Court also notes that it has not been reluctant to affirm the grant of summary judgment on various elements of the test of seaman status, including lack of "permanency or substantiality" in relationship to vessels, lack of vessel in navigation, lack of vessel, lack of permanent assignment to vessel in navigation. *Id.,* n. 12.

In the instant case, the Court must determine whether there is a vessel. If there is no vessel, then the Plaintiff has no case. In determining whether a vessel exists in this case, as in *Bernard,* the task of this Court is review the undisputed facts "to determine whether reasonable persons might draw conflicting inferences." *Id.,* at 828, citing *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 244

(5th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).

### (2) *The Longshore & Harbor Workers' Compensation Act*

It is undisputed that Plaintiff Lash is properly covered by the LHWCA. Under the LHWCA, an employer is required to pay compensation to injured workers; this is an exclusive remedy for an employee against his employer. 33 U.S.C. § 905(a). Nevertheless, the statute goes on to provide that an employee injured "by the negligence of a vessel, ... may bring an action against such vessel...." 33 U.S.C. § 905(b). The term "vessel" includes in its meaning a "vessel owner." 33 U.S.C. § 902(21). Thus, an employee may bring an action against his employer *as vessel owner* for damages caused by the owner's negligence in his capacity as vessel owner. 33 U.S.C. § 905(b); *Pfeifer v. Jones & Laughlin Steel Corp.,* 678 F.2d 453, 456 (3d Cir.1982).

In order for Plaintiff's claim under 33 U.S.C. § 905(b) to survive, the waterborne structure involved must be a "vessel" for purposes of maritime jurisdiction. *See, Richendollar v. Diamond M. Drilling Company, Inc.,* 819 F.2d 124 (5th Cir.1987). Many cases concerned with the issue of whether a particular structure is a "vessel" have come out of the Fifth Circuit. One case from that Circuit, *Bernard v. Binnings Construction Co., Inc.,* 741 F.2d 824 (5th Cir.1984) is strikingly similar to Lash's case.

### (3) *"Vessel" Determination*

In *Bernard,* the Court had to decide whether or not the district court erred in determining as a matter of law that the structure upon which Plaintiff was working when he was injured was not a vessel under the Jones Act.

Before getting into the facts of *Bernard,* Plaintiff's argument that there is a slightly different inquiry in a Jones Act case as distinguished from a LHWCA case is a distinction without significance to the determination of the issue in this case. A Jones Act case requires a showing of the claimant's attachment to a vessel and that his duties are to primarily aid in the vessel's navigation, but these are additional elements that do not render useless Jones Act cases addressing the "vessel" issue. For example, in *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999, *rehearing denied,* 472 F.2d 1405, (5th Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), the Court concluded that a construction platform, consisting of a flatdeck barge with no motive power, was not a vessel for purposes of jurisdiction under the Jones Act or the general maritime law. It stated:

> While a floating dry dock under tow in navigable waters may for a limited time become a subject of maritime jurisdiction, *United States v. Moran Towing & Transportation Co.,* 374 F.2d 656 (4th Cir.1967), neither the capability for such movement nor the fact that the dock has been moved through navigable waters in the past establishes that the dock while secured to the bank and in service is a vessel....

*Id.* at 1001, n. 5, citations omitted. The Court noted that the floating construction platform was capable of limited movement and was in the normal course of its service towed from point-to-point in navigable waters, but concluded:

> The permanence of fixation, however, is not the criterion which governs the maritime status of floating dry docks and similar structures. As the Supreme Court pointed out in *The Robert W. Parsons* the "determinative factors upon the question of jurisdiction [are] the purpose for which the craft was constructed and the business in which it is engaged." 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903).

*Id.* The "vessel" issue is a jurisdictional issue whether the matter is being considered in the context of the Jones Act or the LHWCA, and the additional elements that must be demonstrated in a Jones Act case are easily separated from the analysis.

The plaintiff in *Bernard* was engaged in guiding sheet pilings into place and breaking concrete away from existing pilings,

tasks he accomplished from the water side of the pilings while standing on a small raft or work punt (which Bernard consistently referred to as a "flat boat" or "work boat"). This work punt was 4' × 16' square with a tank at each end and the middle for buoyancy; it had no deck, no crew quarters, no navigational lights, and no means of self-propulsion other than paddling. Although it was not clear from the record whether Bernard moved from piling to piling on shore or on the punt or whether the punt was tied to the pilings, the Court stated, "These unanswered questions, however, do not prevent us from affirming the district court's summary judgment." *Bernard*, 741 F.2d at 826, n. 4.

The Court began its analysis with general principles. It noted that the term "vessel" has generally been defined broadly and in its traditional sense as "structures designed or utilized for 'transportation of passengers, cargo or equipment from place to place across navigable waters,'" and cited 46 U.S.C.App. § 801 and *Cook*. It also noted that "a variety of special purpose structures, far removed from the conventional notion of ships and seagoing barges, are Jones Act vessels," but that

> the size of the structure, its ability to float, the permanence of its fixation to the shore or bottom, and the fact of its movement or its capability of movement across navigable waters are not conclusive of vessel status.

> We note also that a structure whose purpose or primary business is *not* navigation or commerce across navigable waters may nonetheless satisfy the Jones Act's vessel requirement if, at the time of the worker's injury, the structure was actually engaged in navigation.

*Bernard*, 741 F.2d at 829. Addressing the facts before it, the Court concluded:

> The undisputed evidence supports only one rational inference: the work punt was not designed for navigation, was not engaged in the business of navigation, and was not actually in navigation at the time of Bernard's injuries. The work punt lacks all indicia of a structure designed for navigation; it has no raked bow, no means of self-propulsion, and no crew quarters or navigational lights. The parties have stipulated that the work punt was used solely as "a small work platform." In short, we find no evidence from which a trier of fact could reasonably have concluded that the work punt's primary purpose, design or business was other than to provide a work platform. * * *

> We find that the work punt is analogous to a floating dry dock. Its primary function is to serve as a work platform and any transportation function it may have performed is incidental to that purpose.

*Id.* at 832.

Similarly, in the instant case, the floating platform was not designed for navigation and was not engaged in the business of navigation. The floating platform lacks all indicia of a structure designed for navigation, just as Bernard's work punt did. There is no dispute that the platform was used solely as a structure upon which to float a clamshell shovel so that it could do the required dredging work. That the shovel may have been floated between the work site and the moorage site daily across navigable waters is merely incidental to the structure's primary purpose of providing a floating platform for the clamshell shovel to work. There is no evidence from which a trier of fact could reasonably conclude that the platform's primary purpose, design, or business was other than to provide a work platform, and that its transportation function was incidental to that purpose.

Plaintiff attaches significance to the work platform's being untied at the time of the accident. Plaintiff Lash explains in his affidavit that at the time of the accident, after the shovel had grasped an object too large and heavy to bring to the surface, he and his co-worker untied the platform (which he calls a barge) from the piers. They intended to reposition the work platform with the bucket on the bottom, resecure the work platform, and drag the bucket with the object along the bottom out of the way. Unfortunately, the platform then started to list and heel rapidly throwing Plaintiff into the water injuring him.

That the work platform was untied from the pier at the time of the accident does not affect the conclusion that the platform is not a "vessel." Untying the platform from the pier in order to reposition it and relieve the shovel of the heavy object can hardly be described as "navigation" except in the most strained definition of the term. Minor repositioning movements about the work site are a part of the natural manner in which a floating work platform would be utilized and cannot reasonably be thought to confer vessel status on the platform each time it is repositioned.

Plaintiff cites several cases where specialized waterborne structures have been held to be vessels. Defendant properly distinguishes them in terms of the primary purpose of the vessels or their specific usage at the time of the injury. That the platform was capable of and was moved about with the aid of skiffs or pike poles was incidental to its main function: that of a floating platform to provide a purchase for the clamshell shovel to do its dredging work.

## CONCLUSION

The primary function of the floating platform in this case was that of a work platform, *i.e.*, a platform that would serve as a base on the water side of the pier for the dredging by the clamshell shovel. Although the work platform was untied from the pier at the time of the accident, it was not engaged in navigation. Therefore, the work platform is not a "vessel" within the meaning of the Longshore and Harbor Workers' Compensation Act. Reasonable persons could not draw from the facts inferences that conflict with this conclusion.

Summary Judgment is appropriate, there being no genuine issue of any material fact and no basis as a matter of law for Plaintiff's claim under 33 U.S.C. § 905(b). Accordingly, Plaintiff's cause of action is DISMISSED.