Rocco P. DiGIOVANNI, Jr., Plaintiff,

v.

TRAYLOR BROTHERS, INC., Defendant.

Civ. A. No. 89–0369L.

United States District Court,
D. Rhode Island.

Sept. 8, 1993.

David Kaplan, The Kaplan Group, Boston, MA, Merrill J. Freidemann, Lovett, Schefrin & Gallogly, Providence, RI, for plaintiff.

Andrew Rothchild, Lewis, Rice & Fingersh, St. Louis, MO, S. Michael Levin, Edwards & Angell, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the motion of defendant Traylor Brothers, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff DiGiovanni bases his claim on vessel negligence under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b) (1988) ("§ 905(b)"). He seeks to recover for an injury he sustained while performing his duties on barges operated by defendant. Defendant, however, denies § 905(b) liability. The sole issue raised by this motion is whether these barges constitute vessels for purposes of § 905(b).

## BACKGROUND

In 1988, plaintiff was injured while working on a construction project involving the Jamestown bridge, which spans a portion of Narragansett Bay in Rhode Island. His principal duty during the project was to handle a tag line to guide a crane mounted on a barge named the BETTY F. Although plaintiff worked primarily on the BETTY F, at the time of his injury he was standing on the deck of an adjacent supply barge in order to better manipulate the tag line. The deck of the supply barge was slippery, and plaintiff fell.

The BETTY F was a barge, 100 feet in length, with a 40 foot beam and a raked bow and stern, equipped with nautical equipment, such as navigation and anchor lights. In all respects it met the commonly understood characteristics of a vessel, and, indeed, had been inspected by the Coast Guard. Although the BETTY F had no means of self-propulsion, some positional movement could be achieved by manipulating her spud anchors. At the time of plaintiff's injury the barge was positioned on the Bay beneath the

Jamestown bridge, bearing a crane that was being used for bridge construction. It had been at the Jamestown bridge site for a month, situated near the bridge pilings as required for the construction work, and moved away from the pilings at night to prevent damage. While the BETTY F's home port was Wilmington, Delaware, she was permanently stationed in Davisville, Rhode Island, from which she was towed from time to time, by tug, to perform various shore jobs.

The companion barge to the BETTY F, on which plaintiff was actually injured, was a structure measuring 80 feet in length, with a 40 foot beam, that travelled back and forth under tow on an almost daily basis from its main base in Davisville, transporting supplies for use on the BETTY F.

Plaintiff filed suit in this Court in 1989 seeking to recover for his injury under the Jones Act, 46 App.U.S.C. § 688 (1988), or alternatively, for vessel negligence under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The Jones Act provides seamen who suffer personal injury in the course of their employment with a remedy for negligence against their employers, while the LHWCA provides a remedy for injuries to longshoremen and harbor workers against their employers. In addition to the LHWCA's compensation function, under § 905(b) of the LHWCA a worker may bring a third party action against a vessel owner to recover damages for injury caused by the negligence of a vessel.

Plaintiff's case was tried before a jury (Judge Torres presiding) in 1990. The jury found for plaintiff on the Jones Act claim, and awarded damages in the amount of $333,416.00. Since the Jones Act and the LHWCA provide mutually exclusive remedies, the jury, in accordance with the instructions of the Court, did not reach the § 905(b) claim.

Defendant appealed the case to the First Circuit, claiming that plaintiff could not recover because he was not a seaman and the BETTY F was not a vessel under the Jones Act. A three judge panel affirmed the decision below, in accordance with established First Circuit precedent. Defendant petitioned for a rehearing, and the Court granted the petition. The First Circuit, sitting en banc, reversed, determining that plaintiff was not eligible for Jones Act recovery. *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119, 1123–24 (1st Cir.1992) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992). After considering Fifth Circuit precedent, the First Circuit held that for a Jones Act claim, "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *Id.* at 1123. The Court determined that the BETTY F was neither primarily used for navigation or commerce, nor in transport when the injury occurred, and thus concluded that DiGiovanni was not a seaman eligible to recover under the Jones Act. The Court then remanded the case to permit consideration of the § 905(b) claim, and defendant now moves for summary judgment on that claim.

Defendant argues that DiGiovanni's remaining claim must fail because a § 905(b) action presupposes the existence of a vessel, and the BETTY F and her companion supply barge are not vessels. Defendant seems to agree with plaintiff that the definition of vessel set forth in the General Provisions of the United States Code at 1 U.S.C. § 3 provides the definition of a vessel for purposes of § 905(b). However, defendant argues that the Court should consider the use of the structures rather than their physical characteristics in deciding whether they are vessels. Defendant cites cases, primarily from the Fifth Circuit, in which floating dry docks, and moored barges used as work platforms greatly resembling dry docks, are excepted from the definition of § 905(b) vessels as a matter of law. Defendant appears to contend that this Court should apply the Fifth Circuit reasoning to determine that the BETTY F and her companion supply barge were used as work platforms analogous to dry docks, and thus conclude that the barges fail to qualify as vessels for purposes of § 905(b).

Plaintiff opposes defendant's motion by noting first that most courts, including those cited by defendant, define vessel status for

purposes of the LHWCA by reference to 1 U.S.C. § 3. Plaintiff contends that, under this definition, the barges at issue are patently vessels. Plaintiff goes on to argue that the structures in the cases cited by defendant are clearly distinguishable from the BETTY F and its companion supply barge, and, thus, these cases, and any exception to the plain meaning of 1 U.S.C. § 3 espoused within these cases, are irrelevant to the instant proceedings.

The Court heard oral arguments regarding this motion on May 27, 1993, and took the matter under advisement. The matter is now in order for decision.

## DISCUSSION

### I. Standard of Review

Defendants move for summary judgment on plaintiff's claim for vessel negligence under 33 U.S.C. § 905(b). Rule 56(c) of the Federal Rules of Civil Procedure provides the standard for ruling on a summary judgment motion:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In determining whether summary judgment is appropriate, the Court must view the facts on the record and all inferences therefrom in the light most favorable to the nonmoving party. See Blanchard v. Peerless Ins. Co., 958 F.2d 483, 485 (1st Cir.1992); Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir.1991). Additionally, the moving party bears the burden of showing that no evidence supports the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In this case, to succeed, defendant must establish that its barges are not vessels for purposes of § 905(b). As explained below, this Court concludes that defendant has not satisfied its burden, and the motion must be denied.

### II. "Vessel" As Defined By 1 U.S.C. § 3

The portion of § 905(b) of the LHWCA relevant to plaintiff's claim states:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b). While the LHWCA does not provide a definition of the term "vessel," the Code's General Provisions define the word vessel as including "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.

This 1 U.S.C. § 3 definition, with a narrow exception for floating dry docks discussed in the next section, has been applied explicitly or implicitly in every case involving an LHWCA § 905(b) claim of which this Court is aware. Some courts have stated that 1 U.S.C. § 3, as a matter of law, provides the LHWCA "vessel" definition. See, e.g., Kathriner v. UNISEA, Inc., 975 F.2d 657, 662 (9th Cir.1992); Ducrepont v. Baton Rouge Marine Enters., 877 F.2d 393, 395–96 (5th Cir.1989). Other courts, while not mentioning 1 U.S.C. § 3 explicitly, have discussed vessel status in terms of a requirement that the structure perform a transportation function on water. See, e.g., Lash v. Ballard Constr. Co., 707 F.Supp. 461 (W.D.Wash. 1989); Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38, 41–42 (La.1990).

In this case, defendant has not shown the Court that the BETTY F and her companion supply barge fall outside of the 1 U.S.C. § 3 definition. Both barges appear to be waterborne structures "used, or capable of being used, as a means of transportation on water."

It is undisputed that the BETTY F has at times transported a crane over navigable waters to various projects, was stationed in Davisville, Rhode Island, and had her home port at Wilmington, Delaware. In addition, the BETTY F was used for various shore jobs, the details of which have not been revealed to the Court. Importantly, the companion barge, upon which plaintiff actually sustained his injury, had been travelling back and forth on almost a daily basis from its main base in Davisville to the construction site on Narragansett Bay in order to supply the BETTY F with required materials and equipment.

Additionally, although defendant emphasizes that neither barge was capable of movement unassisted (except that the BETTY F could achieve some positional movement by manipulating her spud anchors), it has long been accepted that this factor is not determinative of vessel status. *See, e.g., Burks v. American River Transp. Co.*, 679 F.2d 69, 75 (5th Cir.1982) (barge that is towed is a vessel); *Disbrow v. The Walsh Brothers*, 36 F. 607 (D.N.Y.1888); *The Kate Tremaine*, 14 F.Cas. 144 (E.D.N.Y.1871); *Johnson v. C.F. Harms Co.*, 25 N.J.Misc. 457, 55 A.2d 165 (1946) (barge without motive power is a vessel within the definition of federal statutes). Barges have long been considered vessels within admiralty jurisdiction. *See, e.g., Ellis v. United States*, 206 U.S. 246, 259, 27 S.Ct. 600, 602, 51 L.Ed. 1047 (1907) (scows and dredges are vessels, and are within admiralty jurisdiction of the United States); *The Robert W. Parsons*, 191 U.S. 17, 28–30, 24 S.Ct. 8, 11–12, 48 L.Ed. 73 (1903) (barges fall within courts' admiralty jurisdiction over vessels). Also, the Supreme Court has explicitly noted, "A barge is a vessel within the meaning of the [LHWCA] even when it has no motive power of its own, since it is a means of transportation on water." *Norton v. Warner Co.*, 321 U.S. 565, 571, 64 S.Ct. 747, 750, 88 L.Ed. 931 (1944) (footnote citing to 1 U.S.C. § 3 omitted), *overruled on other grounds by McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (changed definition of "seaman" under Jones Act and LHWCA). Accordingly, defendant has not shown that either the BETTY F or the supply barge fall outside of the definition of vessel set forth in 1 U.S.C. § 3.

### III. Barges Used as Work Platforms

Defendant seems to argue that a literal interpretation of the words in 1 U.S.C. § 3 is inconsistent with the present state of the law applied in determining whether a structure constitutes a § 905(b) vessel. Defendant cites cases from the Fifth Circuit and other courts which have recognized an exception for floating dry docks and structures used as work platforms analogous to dry docks. According to these courts, although literally capable of transportation on water, these structures, which are akin to extensions of land, are not § 905(b) vessels as a matter of law. *See, e.g., Kathriner*, 975 F.2d at 662–63; *Ducrepont*, 877 F.2d at 396; *Davis v. Cargill, Inc.*, 808 F.2d 361, 362 (5th Cir.1986); *see also Keller v. Dravo Corp.*, 441 F.2d 1239, 1244 (5th Cir.1971) (dry dock used for ship repair is not a vessel when moored), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); *Chahoc v. Hunt Shipyard*, 431 F.2d 576, 577 (5th Cir.1970) (floating dry dock is not a vessel when moored and operated as a dry dock), *cert. denied*, 401 U.S. 982, 91 S.Ct. 1198, 28 L.Ed.2d 333 (1971). Although the First Circuit has never addressed the issue, defendant seems to argue that this Court should apply a "use" analysis here to determine that, because the structures in this case were used as work platforms, they were not vessels for purposes of § 905(b).

The Court disagrees with defendant's contentions. This Court determines that, even if the First Circuit recognized an exception to 1 U.S.C. § 3 for structures used as dry docks, defendant has not established that the barges at issue in this case fall within the exception. As discussed in detail below, the cases on which defendant relies to suggest that its barges were not vessels because they were used as work platforms, are all distinguishable from the present case.

Defendant first cites *Ducrepont*, a Fifth Circuit case in which a ship repairer sought to recover under the Jones Act or § 905(b) for injuries sustained aboard a barge utilized

in the repair and cleaning of other barges. *Ducrepont,* 877 F.2d at 394. The Court determined that plaintiff could not recover under § 905(b) because the barge on which he was injured did not qualify as a vessel for purposes of the LHWCA. The Court explained that Fifth Circuit precedent recognized an exception to 1 U.S.C. § 3 for floating dry docks and moored work platforms which were equivalent to dry docks, and determined that the barge on which plaintiff was injured fell within this exception. *Id.* at 396.

Defendant argues that the Fifth Circuit's reasoning supports a determination that its barges were not § 905(b) vessels because they were being used as work platforms. However, such a conclusion does not follow. The Fifth Circuit relied on more than the fact that the barges were being used as platforms, and the factors on which the Fifth Circuit focused are not present in the instant case. Specifically, unlike the BETTY F and her supply barge, the barge in question in *Ducrepont* had been converted into a stationary work platform firmly moored to shore with wires. It had been moved only occasionally in response to changing water levels, was never moved during the time defendant was in business, and was never inspected by the United States Coast Guard. *Id.* at 394–95. The Fifth Circuit determined that the moored barge in *Ducrepont* was equivalent to a dry dock. This Court cannot reach a similar conclusion in this case as to the barges in question.

Similar obstacles interfere with defendant's analysis regarding *Davis,* a slightly earlier Fifth Circuit case. *Davis* involved a longshore worker who was injured on "a surplus dry cargo barge that had been converted to a platform to which vessels were moored for painting and sandblasting." *Davis,* 808 F.2d at 362. The *Davis* barge had a permanent landing extension and was moved only once or twice a year to accommodate changes in the tide. *Id.* Noting that under Fifth Circuit case law floating dry docks, as a matter of law, are not vessels when moored, the Court reasoned that "although the plaintiff was injured while on a work platform and not a dry dock, the simi-

larities between the two compel our holding that this platform, like a moored dry dock used for that purpose, is not a vessel within the meaning of section 905(b)." *Id.* As defendant has not shown that either the BETTY F or her supply barge were permanently moored or exhibited other prominent features of a dry dock, this Court is not similarly compelled to hold that the structures here were not vessels for purposes of § 905(b).

Outside of the Fifth Circuit, defendant cites *Kathriner,* 975 F.2d 657, in which the plaintiff was injured aboard a floating fish processing plant. Specifically, the structure in *Kathriner,* a converted liberty ship called the UNISEA, was permanently anchored and tied to a dock, had been moved once in approximately fifteen years, had no navigational equipment, and was hooked up to city utilities. *Id.* at 659. The Ninth Circuit affirmed the district court's ruling that the UNISEA did not qualify as a vessel for purposes of the LHWCA, noting that "the converted ship no longer retains any functional transportation capacity." *Id.* at 663. As the structure in question in *Kathriner* was even more permanently affixed to the land than the barges in *Ducrepont* and *Davis,* it provides little support for defendant in this case.

Finally, defendant cites *Lash,* 707 F.Supp. 461, in which the status of a work platform was examined for purposes of a § 905(b) claim. The structure, which measured nine feet by eighteen feet, consisted of $12'' \times 12''$ timbers bolted together as a frame for styrofoam, decked over with more timbers. *Id.* at 462. It had no raked bow, no running lights, and no keel, and was designed and built solely to provide a platform for a clamshell shovel used on a dredging project. *Id.* The Western District of Washington, looking to Jones Act cases, determined that the structure was neither designed nor engaged in the business of navigation, and therefore was not a vessel within the meaning of the LHWCA. *Id.* at 464–65.

Defendant contends that this case supports its view that structures used as work platforms are not vessels under § 905(b). However, this Court does not find *Lash* persuasive in the § 905(b) context. Not only did

*Lash* rely on Jones Act cases in reaching its conclusion, but also, the structure in *Lash*, a makeshift work platform designed and used solely to support a clamshell shovel, bears no resemblance to either barge at issue in this case.

In summary, the undisputed facts regarding the BETTY F and her companion supply barge do not suggest any meaningful similarity to the structures in *Ducrepont* and *Davis*, or *Kathriner* and *Lash*, and, thus, even if the First Circuit recognized an exception to the plain meaning of 1 U.S.C. § 3, defendant has not established that either barge would fall within the exception.

## CONCLUSION

For the reasons stated above, the Court determines on the undisputed facts that the barges in issue here constitute vessels for purposes of this § 905(b) vessel negligence action. Accordingly, defendant's motion for summary judgment is hereby denied.

It is so ordered.