Mary Gloria GARCIA, Plaintiff,

v.

UNIVERSAL SEAFOODS, LTD., a Washington Corporation, Defendant.

Bernard OSBORNE, Plaintiff,

v.

UNIVERSAL SEAFOODS, LTD., a Washington Corporation, Defendant.

Nos. C77–603, C77–602.

United States District Court,
W. D. Washington.

June 1, 1978.

George Kargianis, of Rutherford, Kargianis & Austin, Seattle, Wash., for plaintiff.

Richard F. Allen, of Lane, Powell, Moss & Miller, Seattle, Wash., for defendant.

## OPINION

BEEKS, Senior District Judge.

Plaintiffs were injured during May and June of 1976 while employed by defendant aboard its floating seafood processor UNISEA. They have instituted independent actions seeking recovery of damages as seamen pursuant to the Jones Act or the admiralty doctrine of seaworthiness. A threshold question regarding the status of plaintiffs is presented; defendant contends that at the time of plaintiffs' injuries they were not seamen because the UNISEA was not a vessel in navigation, and, thus, they may not recover under either remedy.

The parties have submitted this issue for decision on the record and the cases have been consolidated for this purpose. The record discloses that the UNISEA is a "liberty ship" which had been retired from service and laid up in the Government's mothball fleet in Suisun Bay, California. Defendant purchased the vessel from the Maritime Administration pursuant to non-transportation regulations, precluding defendant from using the vessel in coastwise trade. UNISEA was towed from its retirement anchorage to Seattle for conversion to a seafood processor. At Seattle extensive modifications were undertaken including the removal of the propulsion engine, propeller, and intermediate shaft. The rudder had been previously removed. Furthermore, all navigational equipment, navigation lights, and engine controls were removed. UNISEA was then towed to Dutch Harbor, Alaska in July, 1975 and positioned in the tidelands of Iliuliuk Harbor.

The UNISEA is part of defendant's Dutch Harbor facility which is also comprised of warehouses and bunkhouses ashore and a permanent fishing vessel moorage. It is located adjacent to the shorebuildings and provides the galley, processing lines, and frozen storage, as well as additional living quarters. It is permanently moored with spring lines affixed to approximately sixteen (16) deadheads buried ashore. The bow anchor is also buried ashore and the stern is secured to the shore by means of an anchor chain wrapped around a building foundation. Permanent water, sewage and industrial waste disposal lines run between the land and the UNISEA. It is further connected with shore by two access piers which run from the warehouses ashore to the vessel. Two access doors have been cut in the hull to permit movement of supplies and products directly between the processing lines and the warehouses. The entrances extend below the load line of the vessel and the excess plating has been discarded or used elsewhere. Watertight bulkheads have also been removed to provide suitable access between working areas in the UNISEA.

The UNISEA has not moved from its position other than with the rise and fall of the tides. Defendant's president avers that defendant has no intention to move the facility from its present position. He also avers that the UNISEA is not a documented vessel, that it is inspected by the Alaskan Department of Labor, the fire marshal, and OSHA, rather than by the Coast Guard. Furthermore, the facility is not subject to Coast Guard regulations except those involving water pollution.

Three requisites must be met before one may be classified as a seaman for purposes of the Jones Act: 1) the vessel on which plaintiff is employed must be in navigation; 2) plaintiff must have a more or less permanent connection with the vessel; and 3) the plaintiff must be aboard primarily to aid in navigation. *Bodden v. Coordinated Caribbean Transport*, 369 F.2d 273, 274 (5th Cir. 1966), *accord, Bullis v. Twentieth Century-Fox Film Corp.*, 474 F.2d 392 (9th Cir. 1973).

■■ The purpose for which a facility was constructed and the business in which it is engaged are controlling considerations in determining whether a facility is a vessel. *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 823 (5th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976). The UNISEA was converted from a "liberty ship," laid up, withdrawn from service, and relegated to the "mothball fleet." It was extensively modified to become an integral part of a seafoods processing operation. It is connected to shore by spring lines and anchor chains, permanent utility connections, and two access piers. It has not moved in almost three years and defendant has no intention of moving it. In short, the UNISEA was neither designed for nor used for navigation or transportation. It has no navigation or propulsion gear and it is not used as a barge. It is nothing more than a floating factory whose only connection with navigation is that it rises and falls with the tide and that it is housed in a "liberty ship" hull. The UNISEA is not a vessel in navigation. *See New England Fish Co. v. Sonya*, 332 F.Supp. 463 (D.Alaska 1971).

Accordingly, plaintiffs are not entitled to maintain these actions and they are dismissed with prejudice. The Clerk may enter judgment accordingly.