The ESTATE OF Kenneth WENZEL By its Special Administrator Winston MI-RIKITANI, Edward Wenzel and Anna M. Steinberg, Plaintiffs-Appellants,

v.

SEAWARD MARINE SERVICES, INC., Defendant-Appellee.

No. 82–4619.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1983.

Decided July 7, 1983.

* Hon. John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by des-

John A. Roney, Honolulu, Hawaii, for defendant-appellee.

Christopher P. McKenzie, McKenzie, Trecker & Fritz, Honolulu, Hawaii, for plaintiffs-appellants.

Before BROWNING, PECK *, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Wenzel's estate appeals from the district court's order granting summary judgment in favor of Seaward Marine Services, Inc. (Seaward).

Summary judgment is proper if, when viewing the evidence in the light most favorable to the party opposing the motion, the movant is clearly entitled to judgment as a matter of law. *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1322 (9th Cir.1982). The record before the district court discloses the following facts which we interpret in favor of the Estate of Wenzel as required by *Ferguson.*

Seaward is a corporation engaged in the business of underwater ship maintenance and repair. During the period 1979–1982 Seaward had a contract with the United States Navy to clean the hulls of various ships, including the USS Rathburne. The cleaning process is accomplished by underwater divers, utilizing hand-held scrapers,

ignation.

brushes, and a device known as the SCAMP.[1]

On October 3, 1980, Kenneth Wenzel, a diver/tender employed by Seaward, was assigned to scrape the USS Rathburne's "sea chest" (underwater openings that pump salt water into the ship). These sea chests are cleaned manually by the use of a hand-held scraper or hydroblaster, but not by the SCAMP. The USS Rathburne provided Mr. Kern, Wenzel's supervisor, with a docking plan of the ship. This plan, however, failed to show the location of all the sea chests located on the Rathburne.

On October 3, 1980, at the time when the SCAMP was out of the water, Wenzel was assigned to scrape the sea chests. After a period of time Wenzel did not surface. Another diver entered the water to locate Wenzel. He found Wenzel affixed to a sea chest. Wenzel did not appear to be alive. Later, it was determined that Wenzel died of asphyxiation.

Seaward subsequently paid burial and funeral expenses incurred by Wenzel's estate. This action by Wenzel's estate against the United States and Seaward followed. The claim against the government was dismissed. Seaward moved for a summary judgment, claiming immunity from suit under § 5(a) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(a). Seaward argued that Wenzel was a "harbor worker" within the meaning of the LHWCA. Wenzel's estate countered that Seaward is not entitled to immunity because Wenzel was a "seaman" under the Jones Act and "member of a crew of a vessel." 46 U.S.C. § 688. He was therefore excluded from LHWCA coverage. 33 U.S.C. §§ 902(1)(3) and 903(a)(1).

The district court granted Seaward's motion for summary judgment and specifically found that Wenzel was not a seaman or a member of a crew of a vessel.

Wenzel's estate contends that the district court erred in determining (1) that Wenzel was not a "seaman" with respect to the SCAMP or to the USS Rathburne and (2) that the SCAMP was not a vessel. The test for "seaman" status under the Jones Act is threefold: (1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation. *Bullis v. Twentieth Century-Fox Film Corp.*, 474 F.2d 392, 393 (9th Cir.1973).[2]

In *Bullis*, we stated that "though the test seems simply stated, the result 'depends largely on the facts of the particular case and the activity in which [the claimant] was engaged at the time of the injury.'" *Id.* at 393.

The record discloses that there are disputed issues of fact as well as a conflict as to the factual inferences which can be drawn from facts which are conceded. For example, the parties do not agree that Wenzel was qualified to operate the SCAMP.

Michael Beckman, a diver for Seaward, testified at his deposition that Wenzel was qualified to operate the SCAMP. Two of Seaward's employees testified that Wenzel was not qualified.

The parties appear to be in agreement as to the physical description of the SCAMP. It is a saucer shaped unit which is six feet in diameter and twenty inches deep, which is equipped with an impeller. The SCAMP travels on a horizontal patch at a pre-set speed of fifty-four feet a minute.

The saucer shape of the SCAMP and the impeller cause it to adhere to the underwater surfaces of a ship's hull. The SCAMP

---

1. "SCAMP" is an acronym for submerged cleaning and maintenance platform.

2. The court in *Bullis* determined as a matter of law the off-duty servicemen were not "seaman" while serving as extras on a movie mock-up vessel. There, the court granted summary judgment stating that the servicemen were only aboard a mock-up vessel for two hours and were to act for only five minutes. Thus, their relation to the mock-up was purely transitory both in work to be done and time of its duration. In no sense were they permanently attached to the vessel. Therefore, the servicemen failed to fulfill the second requirement for seaman status.

can be operated by remote control or steered manually by divers. It can advance, reverse, or stop. It is equipped with lights.

We are asked by appellant to infer from these facts that Wenzel was employed as a seaman who operated the SCAMP to aid in its navigation.

Seaward asks us to infer from these same facts that Wenzel was not a member of a crew nor operating a vessel on navigation. We decline to draw such factual inferences.

The fact that the SCAMP was constructed for a purpose other than the transportation of persons or things from one place to another does not mean that as a matter of law, it is not a vessel in navigation.

Strange looking, special purpose craft for the oil and gas business, far different from traditional seafaring ships have sometimes been held to be vessels. *Blanchard v. Engine & Gas Compressor Services Inc.,* 575 F.2d 1140, 1142 (5th Cir.1978). In *Hicks v. Ocean Drilling and Exploration Company,* 512 F.2d 817 (5th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976), a submersible oil storage facility and drilling barge was held to be a vessel even though it had no motive power itself and, when used for drilling rested on the ocean floor. The fact that the barge could be towed from one point to another was sufficient navigational ability to satisfy the Jones Act.

We agree with the Fifth Circuit's conclusion that:

■ Attempts to fix unvarying meanings have a firm legal significance to such terms as "seaman", "vessel", "member of a crew" must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. The Jones Act cases involving coverage are similar in this respect to many negligence and contributory negligence cases. (footnote omitted).

*Offshore Corp. v. Robinson,* 266 F.2d 769, 779 (5th Cir.1959).

Wenzel's status as a seaman and whether the SCAMP is a vessel are each close questions of fact which must first be determined by the trier of fact.

Reversed and remanded for further proceedings.