Don W. KATHRINER, Plaintiff–Appellant,

v.

UNISEA, INC., a Washington corporation, Defendant–Appellee.

No. 91–35480.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1992.

Decided Sept. 17, 1992.

See also 740 F.Supp. 768.

Kurt M. LeDoux, LeDoux & LeDoux, Kodiak, Alaska, for plaintiff-appellant.

Michael M. Holmes and George B. Davenport, Faulkner, Banfield, Doogan & Holmes, Anchorage, Alaska, for defendant-appellee.

Before: HUG, D.W. NELSON, and T.G. NELSON, Circuit Judges.

HUG, Circuit Judge:

Appellant, Kathriner, brought an action under the Jones Act against appellee, Unisea, for injuries sustained while working aboard a floating fish processing plant. The district court granted summary judgment in favor of Unisea on the ground that recovery under the Jones Act, 46 U.S.C.App. § 688, was precluded because the fish processing plant was not a vessel in navigation. The district court also denied Kathriner's motion to amend his complaint to allege a cause of action under the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 901 et seq., on the ground that the floating fish processing plant was not a vessel for purposes of the LHWCA. The district court had jurisdiction pursuant to 28 U.S.C. § 1333(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I.

On March 14, 1989, while working for Unisea, Inc., Kathriner was seriously injured aboard the floating fish processing plant known as the UNISEA. Kathriner lived and worked aboard the UNISEA. He was injured when he fell off a metal stand while performing his duties as a processing worker.

The UNISEA is a former liberty ship that was converted into a fish processing plant. It has a raked hull and appears from the outside to be identical to other liberty ships. It is the same structure involved in *Garcia v. Universal Seafoods, Ltd.*, 459 F.Supp. 463 (W.D.Wash.1978), and continues to operate in the same manner.

The UNISEA is permanently anchored and tied to a dock. It has been at the same location and has been used for the same purpose since it was first towed to Iliulik Harbor, Alaska, in 1975. Except for repositioning in 1987 to permit the construction of new docks, the hull has not moved since 1975, other than to rise and fall with the tide.

The UNISEA is self-contained. It supplies its own electricity and has steam boilers for processing and heat. It is hooked up to city sewage, city water mains, telephone lines, and cable television. The propulsion engine, shaft, propeller, rudder, and all navigational equipment, navigational lights, and engine controls have been removed.

## II.

■ In order to recover as a seaman under the Jones Act, a plaintiff must prove that (1) the vessel on which the plaintiff was employed was in navigation, (2) the plaintiff had a more or less permanent connection with the vessel, and (3) the plaintiff was aboard primarily to aid in navigation. *Bullis v. Twentieth Century Fox Film Corp.*, 474 F.2d 392, 393 (9th Cir.1973).[1] The district court granted summary judgment in favor of Unisea after concluding that the UNISEA was not a "vessel in navigation" at the time Kathriner was injured. Kathriner appeals from this order.

In reviewing a grant of summary judgment, the reviewing court's task is identical to that of the lower court. *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). Viewing the evidence in the light most favorable to the nonmoving party, the court must determine de novo whether there is a genuine issue of material fact or whether the moving party is entitled to judgment as a matter of law. *Id.*

Once the moving party meets its initial burden of identifying the portions of the record that it believes demonstrate the absence of any genuine issue of material fact, the responding party may not rely on the allegations in the pleadings to preclude summary judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Instead, the responding party must set forth, by affidavit or as otherwise provided, "specific facts showing that there is a genuine issue for trial." *Id.*

■■ In general, the term "vessel in navigation" is a broad term that encompasses many vessels that do not literally navigate the high seas. In *Estate of Wenzel v. Seaward Marine Serv., Inc.*, 709 F.2d 1326 (9th Cir.1983), we held that a submerged cleaning and maintenance platform (SCAMP) could be considered a vessel for purposes of the Jones Act. In that case we reversed the district court's grant of summary judgment which had held that, as a matter of law, a SCAMP was not a vessel. We remanded the case so that the characterization issue could be determined by a jury. *Id.* at 1328. However, the characteristics of a SCAMP differ from those of the UNISEA. Consequently, the *Wenzel* decision does not support reversing the district court in the instant case.

The SCAMP in *Wenzel* was an underwater platform six feet in diameter and twenty inches deep. A SCAMP travels underwater along a ship's hull so that divers holding scrapers can clean the bottoms of ships. A SCAMP connects to the bottom of a ship and travels at a preset speed. It can be operated by remote control or steered manually by divers. *Id.* at 1327–28. Although the SCAMP was developed for a purpose other than transportation, we concluded that the proper characterization of the mechanism was for a jury to decide

---

**1.** The third part of this test was rejected by the United States Supreme Court in *McDermott Int'l, Inc. v. Wilander*, —— U.S. ——, ——, 111 S.Ct. 807, 818, 112 L.Ed.2d 866, 883 (1991).

and was not appropriate for summary judgment. *Id.* at 1328.

Unlike the SCAMP at issue in *Wenzel,* however, the UNISEA has no capability of movement. It has no independent source of propulsion, no means of navigation, and no transportation function whatsoever. The UNISEA is permanently moored and is operated merely as a fish processing factory. Although neither a SCAMP nor the UNISEA can navigate the high seas, a SCAMP is still an independent mechanism that is designed to perform its function in the water. The UNISEA, however, is designed as a *floating factory*—merely extending land over water for the purpose of increasing the usable space of a dock-side fish processing operation.

Another recent Ninth Circuit case that addressed the characterization issue is *Gizoni v. Southwest Marine, Inc.,* 909 F.2d 385 (9th Cir.1990), *aff'd,* — U.S. —, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), where we held that a floating platform with no independent power, means of steering, navigation lights, navigation aids, or facilities for crew, could nonetheless be a "vessel in navigation" for purposes of the Jones Act. *Id.* at 387–88. The platform at issue in *Gizoni* was moved about by tug boats and was powered by external sources. However, we concluded that summary judgment was nonetheless inappropriate because a reasonable jury could conclude that the platform was a vessel. The facts of *Gizoni,* however, are distinguishable from the facts of the instant case. The platform at issue in *Gizoni* moved over the water and often transported equipment and ship parts around a dock. *Id.* at 387. The transportation function of the platform made it much more like a vessel in navigation than the UNISEA. The UNISEA is incapable of performing this function. *Wenzel* and *Gizoni* represent the only recent authority from this court on the characterization issue and both are distinguishable from the instant case.

While the general rule in Jones Act cases is that the question of whether or not a "vessel" is involved is typically a jury question, the present case presents a clear-cut

answer. Common sense counsels that we could not reasonably consider the UNISEA a vessel under the Jones Act since she is unfit for offshore use—when the UNISEA was converted to a shrimp processing plant, a large opening was cut into her hull to allow for dock traffic. When she put out to sea, she would surely sink. Summary judgment is "mandated where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander,* — U.S. —, —, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991) (citation omitted). We conclude that the facts of this case justify summary judgment in favor of Unisea.

■ Generally, floating structures are not classified as vessels in navigation if they are incapable of independent movement over water, are permanently moored to land, have no transportation function of any kind, and have no ability to navigate. The SCAMP in *Wenzel* and the platform in *Gizoni* were not connected to land, were capable of transportation, and could be steered and controlled. A SCAMP is connected to a ship and logically can be considered an extension of it. The platform in *Gizoni* was used to transport items across water and was actually transporting a rudder from a shipyard to a floating dry dock at the time the plaintiff in that case was injured. Those facts created jury questions while the characteristics of the UNISEA do not. The district court properly entered summary judgment in favor of Unisea.

In support of its decision that, as a matter of law the UNISEA was not a vessel in navigation for purposes of the Jones Act, the district court cited *Garcia v. Universal Seafoods, Ltd.,* 459 F.Supp. 463 (W.D.Wash.1978). *Garcia* is an unrelated district court case from the Ninth Circuit that characterizes this same barge, the UNISEA, as a nonvessel. The *Garcia* decision was never appealed.

As described in *Garcia:*
The UNISEA was converted from a "liberty ship," laid up, withdrawn from service, and relegated to the "mothball fleet." It was extensively modified to

become an integral part of a seafoods processing operation. It is connected to shore by spring lines and anchor chains, permanent utility connections, and two access piers. It has not moved in almost three years and defendant has no intention of moving it. In short, the UNISEA was neither designed for nor used for navigation or transportation. It has no navigation or propulsion gear and it is not used as a barge. It is nothing more than a floating factory whose only connection with navigation is that it rises and falls with the tide and that it is housed in a "liberty ship" hull.

*Garcia*, 459 F.Supp. at 465. The district court held that these characteristics justify a conclusion, as a matter of law, that the UNISEA is not a vessel for purposes of the Jones Act.

Furthermore, Supreme Court cases that have addressed the characterization issue in a different context have interpreted the term "vessel in navigation" in a manner that supports our ruling in the instant case. In *Cope v. Vallette Dry Dock Co.*, 119 U.S. 625, 627, 630, 7 S.Ct. 336, 336, 338, 30 L.Ed. 501 (1887), the Court ruled that a dry dock used for repairing ships was not a vessel in navigation and was therefore not subject to salvage because it was permanently moored by means of large chains, had no means of propulsion, and was not designed nor could be practically used for navigation. The Court stated that "[t]he fact that it floats on the water does not make [a structure] a ship or vessel." *Cope*, 119 U.S. at 627, 7 S.Ct. at 336.

In *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926), the Court ruled that for purposes of a limited liability statute, a floating office and storage facility was not a vessel in navigation. The statutory definition of vessel was "every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Evansville*, 271 U.S. at 21, 46 S.Ct. at 380 (citation omitted). Nonetheless, the Court held the structure in question was not a vessel; it was secured to the shore by four or five cables, had no machinery or

power for propulsion, had plumbing that was connected with the city water system, obtained electric current and telephone service from the city, and was built for the purpose of storage rather than transportation. *Id.* at 20–22, 46 S.Ct. at 379–380. *See also The Robert W. Parsons*, 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903) ("neither size, form, equipment nor means of propulsion are determinative factors upon the question of jurisdiction, which regards only the purpose for which the craft was constructed, and the business in which it is engaged.").

The decisions of other circuits similarly support the conclusion that the UNISEA is not a vessel in navigation for purposes of the Jones Act. The following are all Jones Act cases where the structure at issue was held not to be a vessel in navigation: *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119, 1123 (1st Cir.1992) (en banc), *petition for cert. filed*, 60 U.S.L.W. 3881 (U.S. June 5, 1992) (No. 91–2011) ("if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit") (citation omitted); *Ellender v. Kiva Constr. & Eng'g, Inc.*, 909 F.2d 803, 806–07 (5th Cir.1990) (summary judgment affirmed because large barge not designed to transport passengers, cargo, or equipment, requiring tug boats for propulsion, and remaining stationary during a job is not a vessel in navigation); *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir.1989) (former cargo barge converted to stationary work platform is not a vessel under the Jones Act); *Bernard v. Binnings Constr. Co., Inc.*, 741 F.2d 824, 832 (5th Cir.1984) (summary judgment affirmed because primary purpose of structure "is to serve as a floating work platform and any transportation function it may have performed is incidental to that purpose"); *Hayford v. Doussony*, 32 F.2d 605 (5th Cir.1929) (gunboat converted into floating dance hall was a nonvessel for purposes of admiralty jurisdiction over wage liens).

These are merely a few of the many cases from other circuits that have held that certain floating structures were not vessels in navigation for purposes of the Jones Act. We find that the characteristics of the UNISEA fit this pattern. The UNISEA is a fish processing plant permanently moored to a dock as a part of a fish processing operation. It has no means of propulsion, navigation, and is not even watertight. There was no evidentiary basis for sending this case to a jury. The district court correctly granted Unisea's motion for summary judgment.

### III.

■ Kathriner also appeals from the district court's denial of his motion to amend his complaint to allege a cause of action under the Longshoremen's and Harbor Worker's Compensation Act. The issue of coverage under the LHWCA presents a closer question. Section 5(b) of the LHWCA requires plaintiffs in vessel negligence cases to prove they were injured as a result of the negligence of the vessel. 33 U.S.C. § 905(b) (1988). *See Davis v. Cargill, Inc.,* 808 F.2d 361 (5th Cir.1986) (per curiam). The district court denied Kathriner's motion to amend his complaint to include a claim under the LHWCA after ruling that, as a matter of law, the UNISEA is not a vessel. This court reviews *de novo* the district court's determination that the UNISEA is not a vessel as a matter of law. *Tzung v. State Farm Fire & Cas. Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

■ There is no formula by which to determine whether a structure is a vessel. The LHWCA does not define the term "vessel," but that term is defined in 1 U.S.C. § 3 as follows:

> The word "vessel" includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

1 U.S.C. § 3 (1988). This definition is the one adopted by most courts for purposes of the LHWCA. *See McCarthy v. The Bark Peking,* 716 F.2d 130, 133–34 (2d Cir.1983) (listing decisions adopting this definition),

*cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). The key characteristic of vessels under this definition is that they are capable of transportation over water.

■ The district court relied on *Davis v. Cargill, Inc.,* in its decision to grant summary judgment in favor of Unisea on the LHWCA claim. In *Davis,* the court affirmed a district court order granting summary judgment in favor of the defendant on the ground that a floating platform permanently moored to the riverbed is not a vessel for purposes of the LHWCA. 808 F.2d at 362. The platform at issue

> floated on the water but was anchored to the riverbed and equipped with a permanently attached landing extension. Other modifications had also been made, including the cutting of a door into the hull and installation of sandtanks and air compressors in the hull. The platform is moved only to accommodate the changing tide of the river.

*Id.* The immobility of the platform in *Davis* led that court to conclude that the platform was not a vessel. *Id.* The district court in the instant case likened the UNISEA to the platform in *Davis.* The district court also noted that the platform in *Davis* was relocated according to the condition of the river, while the UNISEA was permanently moored.

Kathriner cites *McCarthy v. The Bark Peking,* 716 F.2d 130 (2d Cir.1983), for the proposition that the UNISEA is a vessel. In *McCarthy,* the Second Circuit concluded that a permanently moored ship, restored to its former state except for its rudder which had been welded in place, was a vessel for purposes of the LHWCA. The court stated the following:

> The Peking may be fated to ride at anchor for the rest of her days. Her rudder is welded in place. Her owner has no intention of slipping her moorings and taking her again to the open seas, with the seagulls in her wake. But she retains at least this much of the dignity of her former venerable station: as long as she rides at anchor in the harbor, ready and able to head for the open seas,

even in tow, she remains a vessel. Much as we should like to formulate a definition of "vessel" that captures the essence of the seagoing definiendum, no Platonic form suggests itself; hence we are left with the halting efforts of the common law.

*McCarthy,* 716 F.2d at 136.

The district court in the instant case distinguished the facts of *McCarthy* as follows:

> The vessel in *McCarthy* retained the characteristics of a "vessel." The facility, Unisea, in contrast retains little or no semblance to the liberty vessel as originally constructed. As the court in *Garcia* noted, the vessel was refitted as a seafood processor and is "nothing more than a floating factory ... housed in a 'liberty ship' hull."

Order at 6. We agree with the district court that *McCarthy* is distinguishable because the ship in that case retained the characteristics of a ship, while the UNISEA has been completely transformed into a floating factory.

Other cases decided by other circuits support our decision. The cases that have held a structure to be a vessel clearly focus upon an actual or potential transportation function. *See, e.g., City of Los Angeles v. United Dredging Co.,* 14 F.2d 364, 365 (9th Cir.1926) (steam dredges operating in Los Angeles harbor are vessels); *Burks v. American River Transp. Co.,* 679 F.2d 69, 75 (5th Cir.1982) (barge that is towed out and tied to ships for loading and unloading purposes is a vessel).

The cases that have held a structure to be a nonvessel focus upon immobility and the nontransportation purposes for which the structures are created. *See, e.g., Cope v. Vallette Dry Dock Co.,* 119 U.S. 625, 630, 7 S.Ct. 336, 338, 30 L.Ed. 501 (1887) (floating dry docks are not vessels); *The Robert W. Parsons,* 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903) ("Neither size, form, equipment, nor means of propulsion are determinative factors upon the question of jurisdiction, which regards only the purpose for which the craft was constructed, and the business in which it is engaged."); *Royal Ins. Co. of Am. v. Pier 39 Ltd. Partnership,* 738 F.2d 1035, 1037 (9th Cir.1984) (floating breakwaters and docks are not vessels for purposes of admiralty jurisdiction); *Richendollar v. Diamond Drilling Co.,* 819 F.2d 124, 127–28 (5th Cir.) (jackup drilling rig under construction on land was not a vessel), *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).

The purpose and design of the UNISEA is to process fish. The converted ship no longer retains any functional transportation capacity. We hold that the district court correctly ruled that the UNISEA is not a vessel for purposes of the LHWCA and, thus, did not err in denying the motion to amend to state a claim under the LHWCA.

AFFIRMED.