153 F.3d 1055
 1998 A.M.C. 2764, 98 Cal. Daily Op. Serv. 6852,
98 Daily Journal D.A.R. 9477
 Brian Louis DELANGE, Plaintiff-Appellant,
v.
DUTRA CONSTRUCTION CO., INC., In Personam; Chromalloy
American Corporation, In Personam; Janet C, O.N., the tug,
her equipment, and appurtenances; In Rem; Doe Pontoon
Barge, her equipment, and appurtenances; In Rem,
Defendants-Appellees.
 No. 96-17270.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 8, 1998.[1]
Decided Sept. 1, 1998.
 
 Withdrawn by 169 F.3d 666.
 Jay Lawrence Friedheim, Admiralty Advocates, Honolulu, Hawaii, for plaintiff-appellant.
 Glenn N. Taga, Gronau Choy & Taga, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii; Samuel P. King, District Judge, Presiding. D.C. No. CV-96-00221-SPK.
 Before: BROWNING, BRUNETTI, and RYMER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Brian Louis Delange ("Delange") appeals the district court's grant of summary judgment for Dutra Construction ("Dutra"). We affirm.
 
 I.
 
 2
 Dutra hired Delange out of a carpenter's union as a carpenter. His actual duties included mechanical work, welding, carpentry, supply runs, and occasional piledriving. Delange was not permanently or regularly assigned to the crew of a barge or tug used in Dutra's construction projects, but when a barge was being moved Delange occasionally performed work typically done by deckhands, securing and stowing cargo, handling lines, and serving as a lookout. On one occasion, Delange piloted a tug.
 
 
 3
 On the day Delange was injured, he was assigned to a piledriving crew engaged in the construction of a navigation aid. He and a co-worker, Jess Jackson, rode to the construction site on a barge to be used as a work platform. The barge was towed by a tugboat.
 
 
 4
 Delange was responsible for keeping the barge's equipment secure while the barge was in transit. When the barge arrived at the construction site, the captain ordered Delange and Jackson to release a "spud"--a cylindrical anchoring device dropped through an opening in the deck of the vessel by removing pins passing horizontally through the spud. Jackson used a winch to lift the spud slightly to permit removal of the pins. Delange encountered difficulty while attempting to remove one of the pins, and signaled Jackson to lower the spud. Delange's fingers were crushed when the spud descended.
 
 
 5
 Delange brought suit against Dutra under the Jones Act and the Longshore Harbor Workers Compensation Act ("LHWCA"). The district court granted summary judgment for Dutra on both claims.II.
 
 
 6
 The Jones Act provides a claim for "any seaman" injured "in the course of his employment." 46 U.S.C. app. § 688 (1998). The issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997). Summary judgment nevertheless is appropriate where "the facts and the law will reasonably support only one conclusion." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 353-54, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).
 
 
 7
 A plaintiff is a Jones Act seaman only if he has a substantial connection to a "vessel in navigation." Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). To determine a plaintiff's status under the Jones Act, the court "should not employ a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury," but instead should examine the overall relationship between the plaintiff and the vessel. Id. at 363, 115 S.Ct. 2172 (citation and internal quotations omitted). Applying this test to the record before us, we conclude Delange failed to raise a triable issue of fact as to his status as a seaman.
 
 
 8
 We must first consider whether the barge qualifies as a "vessel in navigation." See Wilander, 498 U.S. at 356, 111 S.Ct. 807 (explaining that seaman status "will depend on the nature of the vessel and the employee's precise relation to it").
 
 
 9
 There is no generalized test for determining whether a craft is a "vessel in navigation," but prior cases provide some guidance. In Gizoni v. Southwest Marine, Inc., 909 F.2d 385 (9th Cir.1990), aff'd, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), we held a floating platform used at the time of the accident to transport a rudder could be a "vessel in navigation," even though it had no independent means of propulsion. See id. at 387-88. In Kathriner v. UNISEA, Inc., 975 F.2d 657 (9th Cir.1992), we held that a permanently-moored fish processing plant without independent means of propulsion was not a "vessel in navigation." Distinguishing Gizoni, we emphasized that the fish processing plant's principal purpose did not involve navigation or transportation. See id. at 660.
 
 
 10
 Gizoni and Kathriner together demonstrate that while a craft's structural characteristics are relevant to the issue of whether it is a "vessel in navigation," so is the purpose or function of the vessel. This is consistent with the Fifth Circuit's approach to vessel classification, which focuses on "the purpose for which the craft was built and the business in which it was engaged," Ellender v. Kiva Constr. & Eng'g, Inc., 909 F.2d 803, 806 (9th Cir.1990), and in particular on whether the craft's purpose or function involves transportation of persons or cargo across water, see Bernard v. Binnings Constr. Co., 741 F.2d 824, 828-29 (5th Cir.1984).
 
 
 11
 The record shows the barge had to be towed by a tug, and was used principally as a work platform. Delange's affidavit states he spent 80% of his employment time on the barge, but acknowledges that the barge moved on only four occasions while he was on it. The only change in location detailed in the record lasted less than a full day, and was undertaken to position the barge for its next construction project. In short, the barge was in transit with Delange aboard for a maximum of four days during the five months Delange was employed by Dutra; during the remaining time, the barge served as a stationary construction platform. Because the barge's movement was incidental to its service as a work platform, it was not a "vessel in navigation." As the Fifth Circuit has explained:
 
 
 12
 [W]here a barge was not designed or used to transport passengers, cargo, or equipment from place to place across navigable waters, where the barge required tugboats or other vessels to move it, and where the barge remained virtually stationary during any particular project, the barge would not qualify as a Jones Act vessel.
 
 
 13
 Ellender, 909 F.2d at 806 (citations omitted); see also Bernard, 741 F.2d at 826 (holding that a small work platform without independent means of propulsion was not a vessel in navigation); Ducrepont v. Baton Rouge Marine Enters., Inc., 877 F.2d 393, 396 (5th Cir.1989) (concluding that a barge moored to shore and used as a stationary work platform was not a vessel in navigation).
 
 
 14
 Because the barge was not a "vessel in navigation" during Delange's service on it, Delange was not a Jones Act seaman.
 
 III.
 
 15
 The LHWCA establishes a worker's compensation regime for workers injured while "engaged in maritime employment," 33 U.S.C. § 902(3), but explicitly excludes, inter alia, "a master or member of a crew of any vessel," 33 U.S.C. § 902(3)(G). LHWCA and Jones Act remedies are mutually exclusive: an injured seaman covered by the Jones Act is not entitled to LHWCA benefits, and an injured longshoreman covered by the LHWCA cannot sue the vessel on which he was injured under the Jones Act. See Chandris, 515 U.S. at 355-56, 115 S.Ct. 2172. Although Delange was not a Jones Act seaman, he clearly was a maritime employee covered by the LHWCA.
 
 
 16
 Longshoremen injured on the job are entitled to recover compensation and benefits from their employers, see 33 U.S.C. § 904(a), and Delange has already received such benefits. A longshoreman also may sue the operator of the vessel on which he was injured for negligence. See 33 U.S.C. § 905(b). Delange contends his claim for negligence should have been submitted to a jury. We disagree.
 
 
 17
 The only duty at issue in this case was Dutra's duty to turn over the barge in a reasonably safe condition, or its "turnover duty." See Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 167-78, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994). The turnover duty has two components. First, a vessel operator must exercise ordinary care to turn over the vessel and its equipment in such condition that experienced longshoremen reasonably conducting their operations will not be injured. See Scindia, 451 U.S. at 167, 101 S.Ct. 1614. Second, an operator must warn the longshoremen of any hazards on the ship that are known to it or should be known to it in the exercise of reasonable care. See id. The duty to warn attaches only to hazards "that are not known by the [longshoreman] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." Id. (citation omitted).
 
 
 18
 Delange contends the accident that severed his fingers was caused by a hidden defect in the barge's spud mechanism. In particular, Delange maintains that he had difficulty removing the pin because it was bent, a defect he could not have identified in time to avoid the accident because the pin was hidden in the spud.
 
 
 19
 Because Dutra introduced evidence that the captain found no problems during an inspection of the barge and the tug on the morning of the accident, Delange was required to offer evidence of specific facts showing his negligence claim was triable. See Fed.R.Civ.P. 56(e). Further, where, as here, the nonmoving party relies only on his own affidavit to oppose summary judgment, "[he] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1993) (citation omitted).
 
 
 20
 Delange averred the pin was bent, but offered no evidence that Dutra was aware of that fact, or would have discovered it by making a reasonably careful inspection. The mere assertion that the pin was bent, without a showing of specific facts supporting negligence on the part of Dutra, amounts to a claim that the barge was unseaworthy, a strict liability claim not cognizable under section 905(b). See 33 U.S.C. § 905(b) ("The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred"); Bilderbeck v. World Wide Shipping Agency, 776 F.2d 817, 818 (9th Cir.1985) (explaining that under the LHWCA, "[t]here is no warranty ... running to the workman, that the vessel is free from defect."); Subingsubing v. Reardon Smith Line, Ltd., 682 F.2d 779, 780 (9th Cir.1982). Delange also contends he was injured because there were no handles on the spud pin, but submitted no evidence that Dutra acted negligently in using pins without handles.IV.
 
 
 21
 Because Delange failed to raise a triable issue of fact with respect to his Jones Act and LHWCA claims, the district court properly granted Dutra summary judgment.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir. R. 34-4 and Fed. R.App. P. 34(a)