**Arthur MARTINEZ, Plaintiff,**

v.

**SIGNATURE SEAFOODS, INC., and the F/V Lucky Buck, official # 567411, her machinery, appurtenances, equipment and cargo, in rem, Defendants.**

**No. C00–1293 P.**

United States District Court,
W.D. Washington,
at Seattle.

July 11, 2001.

Thomas M. Geisness, Geisness Law Firm, Seattle, WA, for plaintiff.

Bradley P. Scarp, William Thomas Montgomery, Montgomery Scarp, Seattle, WA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PECHMAN, District Judge.

This matter came before the court on Signature Seafoods' (hereinafter "Signature") motion for summary judgment. Having considered the exhibits and declarations filed herein, the Court GRANTS Signature's motion.

### I. *Procedural History*

On or about July 11, 1997, Signature hired Arthur Martinez (hereinafter "Mr. Martinez") as a fish processor. He performed his work aboard the F/V LUCKY BUCK (hereinafter "LUCKY BUCK") in Neets Bay, Alaska. He also worked on a delivery boat that brought fish to the processing plant. Specifically, he helped unload the boat, tie up the boat, and clean the hold where the fish were stowed. Declaration of Arthur Martinez, Plaintiff's Ex. 1. This vessel was chartered and controlled

by the fish hatchery for which Signature processes fish. Declaration of Signature President William Orr. Mr. Martinez lived and worked aboard another vessel—the SPEEDWELL—that was tied to the outside of the LUCKY BUCK. He performed tasks such as burning wood, throwing away materials from the barge, and cleaning the bathrooms. After a couple of weeks, Mr. Martinez developed pain in his hands requiring a hospital visit. He was diagnosed with carpal tunnel syndrome and sent back to Seattle. Declaration of Arthur Martinez. After Mr. Martinez returned to Seattle, he met with Signature's insurance representatives at Alaska National Insurance Company. Mr. Martinez was told that he had the option to recover for his injuries under the Jones Act or the Alaska Worker's Compensation Act. Mr. Martinez chose to receive benefits under the Jones Act and received maintenance at the rate of $20.00 per day from August 26, 1997 to October 10, 1997 in addition to his unearned wages. Declaration of Arthur Martinez.

In June, 1998, Mr. Martinez switched from Jones Act coverage to the Alaska Workers Compensation program in order to take advantage of vocational benefits. He was told by Lauren Schiller (Signature's insurance representative) that he would temporarily be placed under the Alaska system, but that he could switch back to the Jones Act after the termination of the vocational benefits. Declaration of Arthur Martinez. He then received time loss benefits of $154.00 per week from June 30, 1998 to February 6, 2000 and maintenance from February 6, 2000 to May 6, 2000. He also received worker's compensation from May 7, 2000 to May 20, 2000 and then maintenance from May 21 to November 25. On or about May 5, 2000, Alaska National filed a "controversion notice" with the Alaska Department of Labor controverting all benefits because

"claimant is being provided wages, maintenance and cure benefits" pursuant to the Jones Act and General Maritime Law. Check stubs and controversion notice, Plaintiff's Ex. 2. Mr. Martinez subsequently filed a personal injury suit in this Court under the Jones Act and the federal maritime doctrine of unseaworthiness. Signature responded by filing the present motion for summary judgment alleging that Mr. Martinez was not a "seaman" at the time of his alleged injury.

## II. *Legal Authority*

### A. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is mandated where the facts and the law will reasonably support only one conclusion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the context of a Jones Act claim, "the question of who is a 'seaman' is better characterized as a mixed question of law and fact." *McDermott Int'l v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). "The inquiry into seaman status is of necessity fact specific; it will depend upon the nature of the vessel and the employee's precise relation to it." *Id.*

### B. *Jones Act Coverage*

The Jones Act provides a federal negligence cause of action to "any seaman who shall suffer personal injury in the course of his employment." 46 U.S.C.App. § 688(a). Unfortunately, the term "seaman" was left undefined in the statute.

After years of grappling with the definition, the Supreme Court finally settled on two "essential requirements" for seaman status: "*First*, an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. *Second*, a seaman must have a connection to a vessel in navigation ... that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (emphasis added). The Court explained that the purpose of the substantial connection requirement is to "give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied." *Id.* at 368–69, 115 S.Ct. 2172. "The duration of a worker's connection to a vessel and the nature of the worker's activities," continued the Court, "determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370, 115 S.Ct. 2172.

### III. *Discussion*

A. *Mr. Martinez's employment contract does not confer "seaman" status simply because it offered the option of general maritime benefits.*

 ■ Mr. Martinez opposes Signature's motion for summary judgment on two grounds. First, he contends that he is entitled to Jones Act benefits because his employment contract gave him the option of selecting general maritime benefits. He relies on the court's decision in *Lara v. Harvey's Iowa Management Co.*, 109 F.Supp.2d 1031 (S.D.Iowa 2000), where a bartender aboard a riverboat casino was injured and brought suit seeking damages under the Jones Act. The court denied defendant's motion for summary judgment based on a provision in the employee handbook that qualified any employee who spent more than 30% of her time on the boat for Jones Act benefits. *Id.* at 1035. The court placed special emphasis on the fact that the casino made the determination as part of a business plan and intended to financially benefit from it. *Id.* at 1036. That circumstance is lacking in the present case. The initial election to accept general maritime remedies belonged to Mr. Martinez and he subsequently changed his mind and opted for worker's compensation. Signature did not have a predetermined classification scheme designed as part of a business plan, thus there is no reason to classify Mr. Martinez as a seaman based on his selection of one type of benefits over the other.

In fact, the same argument was made and rejected by the Fifth Circuit in *Fields v. Pool Offshore, Inc.*, 182 F.3d 353 (5th Cir.1999). In *Fields*, the plaintiff was injured on a fixed platform and paid maintenance by his employer's insurance adjuster, who classified him as a seaman. According to the court, the employer's classification and the payment of maritime remedies did not justify, as a matter of law, concluding that plaintiff was a seaman. As to the payment of maritime remedies, the court noted, "the payment of maintenance is at most only one factor out of many ... and cannot by itself justify remand given the clarity of Neptune Star's work platform status." *Id.* at 360. Furthermore, as to the employer's classification, the court stated, "the fact that employees of Pool may have implicitly

classified the Neptune Star as a vessel is of marginal significance at best." *Id.*

B. *Mr. Martinez's duties aboard the LUCKY BUCK and the SPEED-WELL do not confer "seaman" status at the time of his alleged injury because they are not vessels in navigation.*

 Mr. Martinez's second contention is that a reasonable jury could find he is a "seaman" under the Jones Act. Mr. Martinez bases this claim on his declaration, and as the non-moving party all inferences are made in his favor. Mr. Martinez does not argue that the LUCKY BUCK is a vessel in navigation, but rather asserts that he performed several tasks aboard the "tug" that pulled the LUCKY BUCK to Alaska (Plaintiff's Ex. 1, Declaration of Mr. Martinez) in an attempt to satisfy *Chandris'* second prong requiring a substantial connection to a vessel in navigation. In a previous ruling, this Court struck the portion of Mr. Martinez's declaration stating that he performed tasks aboard the vessel which towed the LUCKY BUCK from Seattle to Alaska for lack of personal knowledge. Mr. Martinez does not name the vessel that supposedly towed the LUCKY BUCK, but the declaration of Signature President William Orr establishes the vessel as the SPEED-WELL. Declaration of William Orr, p. 2. The SPEEDWELL is a floating hotel incapable of independent propulsion. Declaration of William Orr, p. 2. Therefore, Mr. Martinez's duties aboard the SPEED-WELL fail to satisfy *Chandris'* second prong.

The Ninth Circuit, in *Kathriner v. UNI-SEA,* 975 F.2d 657, 660 (9th Cir.1992), found that a converted fish processing plant was not a vessel in navigation for purposes of the Jones Act. The court noted that floating structures are not vessels in navigation if they are not capable of independent movement, are permanently moored to land, and have no transportation function and no ability to navigate. *Id.* The LUCKY BUCK, similar to the barge in *Kathriner,* was converted for use in seafood processing, is no longer capable of navigation, lacks any independent means of propulsion, and does not serve a transportation function. Additionally, the Coast Guard granted the LUCKY BUCK "permanently moored" status in 1997 and at the time of Mr. Martinez's injury, it was connected to the shore by a 5' by 200' floating walkway.

While the barge in *Kathriner* was completely immobile, the Lucky Buck is towed to Alaska twice each year. However, this fact is inapposite because a vessel in navigation requires significantly more attributes than the ability to be towed. In *Hoggatt v. F/V BERING STAR,* 1999 AMC 852, 854, 1999 WL 642198 (W.D.Wash.1999), the court granted a barge owner's motion for summary judgment. The court found the plaintiff was not a "seaman" under the Jones Act because the vessel he was working on was not in navigation at the time of his injuries. The barge in question was converted to serve as a work platform and it moved between two and four times per year. The court found that although the vessel occasionally transported equipment, its primary purpose was to serve as a work platform for seafood processing. *Id.* at 853, 1999 WL 642198. The vessels at issue in *Hoggatt* and *Kathriner* are analogous to the LUCKY BUCK and establish that it is not a vessel in navigation under the Jones Act.

C. *Mr. Martinez's duties aboard the salmon tender vessel do not confer "seaman" status.*

 Finally, Mr. Martinez's work associated with the salmon delivery boat fails to confer "seaman" status. Mr. Martinez claims that he tied up the delivery boat, unloaded it, and cleaned the hold where

the fish were stored at least "4–5 times." Plaintiff's Ex. 1, Declaration of Mr. Martinez. To qualify as a "seaman," an employee's duties must contribute to the function of a vessel *and* he must have a substantial connection to a vessel in navigation in terms of both duration and nature. Mr. Martinez establishes a connection in terms of *duration* by virtue of the scope of his employment contract, but his incidental tasks fail to establish a connection in terms of the *nature* of the work. Carrying out incidental tasks "4–5 times" fails to satisfy the *Chandris* substantial connection requirement. Furthermore, the delivery boat was owned by a third party, it was chartered to and controlled by the fish hatchery for which Signature processes fish, and Mr. Martinez was not injured aboard it.

### IV. *Conclusion*

■ The Supreme Court has made clear that the Jones Act is intended to protect those whose work regularly exposes them to the special hazards and disadvantages associated with going to sea. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). Mr. Martinez's processing work on a stationary barge and incidental duties on two vessels tied to the barge do not qualify him as a "seaman" for the purposes of the Jones Act or the doctrine of unseaworthiness. Accordingly, there are no material disputed facts on the issue of Mr. Martinez's status and the facts and the law reasonably support only one conclusion. Mr. Martinez is not a "seaman" and his complaint is hereby dismissed as a matter of law.

The Clerk is directed to send copies of this order to all counsel of record.