**Arthur MARTINEZ, Plaintiff–Appellant,**

v.

**SIGNATURE SEAFOODS INC; Lucky Buck F/V, Official # 567411, her machinery, appurtenances, equipment and cargo, in rem, Defendants–Appellees.**

**No. 01–35768.**

United States Court of Appeals, Ninth Circuit.

---

Submitted July 8, 2002.*

Filed Sept. 11, 2002.

Eric Dickman, Dickman Law Group, Seattle, WA, for the appellant.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Tom Montgomery, Montgomery Scarp, PLLC, Seattle, WA, for the appellees.

Before HALL, TASHIMA, and RAWLINSON, Circuit Judges.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge.

This case requires us to determine whether triable issues of fact exist as to whether a seaworthy fish processing barge that is towed across navigable waters twice a year can qualify as a "vessel in navigation" for certain purposes of the Jones Act, 46 U.S.C. § 688. We hold that they do, reverse the district court, and remand for further proceedings.

## BACKGROUND

On July 8, 1997, defendant Signature Seafoods, Inc. ("Signature Seafoods") hired plaintiff Arthur Martinez to work as a fish processor in a processing plant aboard the barge known as the Lucky Buck. During the period of his employment with Signature Seafoods, Martinez lived aboard another barge, the Speedwell, that was tied to the Lucky Buck.

In the course of his employment, Martinez developed pain in his hands, and was diagnosed with carpal tunnel syndrome. He was sent back home to Seattle, Washington. After disputes with the Alaska Department of Labor regarding his entitlement to benefits under both the Jones Act and Alaska's workers compensation system, Martinez filed this personal injury suit in district court, raising claims under the Jones Act and the federal maritime doctrine of unseaworthiness.

Defendants responded by filing a motion for summary judgment, claiming that Martinez is not covered by the Jones Act because he was not a "seaman" within the meaning accorded to it by the Act at the time of his alleged injury. The district court agreed, finding that Martinez lacked seaman status as a matter of law because neither the Lucky Buck nor the Speedwell was a "vessel in navigation." Martinez appeals, contending that triable issues of fact exist as to whether the Lucky Buck qualifies as a vessel in navigation.

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment de novo. *Pool v. Vanrheen,* 297 F.3d 899, 905(9th Cir.2002). The Jones Act provides a cause of action for "any seaman" injured "in the course of his employment." 46 U.S.C. § 688. The issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). Summary judgment should not be granted unless "the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 353–54, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

### II. Characteristics of the Lucky Buck

The Lucky Buck was originally built as a derrick barge, but was rebuilt in 1992 as a "factory seafood processing barge." It is now used as a floating fish processing factory. The Lucky Buck is a documented vessel with the United States Coast Guard. However, it was granted permanently moored status in July 1997. While the Lucky Buck has no means of self-propulsion and must be towed in order to move,

it is relocated twice a year. In June of each year it is towed from Seattle, Washington to its mooring site in Neets Bay, Alaska, and it is towed back to Seattle each October. While Signature Seafoods employees are never on board the Lucky Buck while it is being towed, the Lucky Buck does carry incidental supplies on its voyages between Washington and Alaska.

The Lucky Buck has a shaped raked bow, a flat main deck, a flat bottom, flat sides, a square raised stern, and is equipped with a bilge pump. It also has living quarters used by fish processors and administrators while it is moored in Alaska. Pursuant to Coast Guard requirements for vessels, the Lucky Buck is equipped with navigational lights. Other than these lights, however, it has no navigational equipment—specifically, the Lucky Buck has no rudder, keel or propeller. Nor is it equipped with life rafts.

In Neets Bay, Alaska, the Lucky Buck is moored by four anchors and a cable affixed to shore. It floats 200 feet off shore and is accessible to land via a floating walkway. The Lucky Buck receives water from a pipe connected to the shore.

## III. Application

There is no generalized test in the Ninth Circuit for determining whether a craft is a vessel in navigation, although prior cases provide some guidance. Cases involving strange-looking, special-purpose craft, far different in structure and purpose from traditional seafaring ships, have presented jury questions as to whether the structures are vessels in navigation. For instance, in *Estate of Wenzel v. Seaward Marine Servs., Inc.*, 709 F.2d 1326 (9th Cir.1983), we found that triable issues of fact existed as to whether a submerged cleaning and maintenance platform used to clean the hulls of ships qualified as a vessel in navigation. We noted that the term "vessel" has such a wide meaning under

the Jones Act that "except in rare cases, only a jury or trier of facts can determine [its] application in the circumstances of a particular case." *Id.* at 1328. In *Gizoni v. Southwest Marine, Inc.*, 909 F.2d 385 (9th Cir.1990) (*Gizoni I*), aff'd, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), we held that a floating platform used at the time of the accident to transport a rudder could be a vessel in navigation, even though it had no independent means of propulsion. *See id.* at 387–88. The platform at issue in *Gizoni* moved over the water and often transported equipment and ship parts around a dock. *Id.* at 387.

Notwithstanding these cases, Signature Seafood argues that *Kathriner v. UNISEA*, 975 F.2d 657 (9th Cir.1992), compels a determination that the Lucky Buck is not a vessel in navigation. We disagree.

In *Kathriner* we addressed whether a former liberty ship that was converted into a fish processing plant could qualify as a vessel in navigation. The Unisea was permanently anchored to a dock and had not moved (with the exception of a repositioning in 1987 to permit the construction of new docks) between 1975 and 1992. *Id.* at 659. The Unisea was hooked up to city sewage, city water mains, telephone lines, and cable television. *Id.* The propulsion engine, shaft, propeller, rudder, and all navigational equipment, navigational lights, and engine controls had been removed. *Id.* Most significantly, a large opening was cut into its hull to allow for dock traffic. *Id.* at 660. We held that the Unisea was not a vessel in navigation as a matter of law, reasoning that floating structures should not be classified as vessels in navigation if they are "incapable of independent movement over water, are permanently moored to land, have no transportation function of any kind, and have no ability to navigate." *Id.* We distinguished *Gizoni* and *Estate of Wenzel* on

the grounds that the structures in navigation in those cases "were not connected to land, were capable of transportation, and could be steered and controlled." *Id.*

■ While also a fish processing factory, the Lucky Buck is distinguishable from . the Unisea insofar as it is actually seaworthy. Specifically, the Lucky Buck is not permanently moored,[1] and unlike the Unisea, which was completely unfit for offshore use, the Lucky Buck has the ability to navigate the seas. *Compare Estate of Wenzel,* 709 F.2d at 1328(citing *Hicks v. Ocean Drilling and Exploration Co.,* 512 F.2d 817 (5th Cir.1975) (fact that barge could be towed from one point to another was sufficient navigational ability to satisfy the Jones Act)). Most importantly, in contrast to the Unisea, the Lucky Buck has a transportation function, as it carries the fish processing plant, crew quarters, and incidental supplies between Seattle and Alaska twice each year. Even if the transportation function of the Lucky Buck is incidental to its primary purpose of serving as a floating fish processing factory, that fact does not preclude a finding that it was a vessel in navigation. *See Gizoni v. Southwest Marine Inc.,* 56 F.3d 1138, 1142 (1995) (*Gizoni II* ).

In addition, while there is no evidence that the Lucky Buck has actually traveled anywhere other than Alaska to serve as a fish processing vessel, there is evidence that the barge was designed as "a fish processing vessel which operates in and processes fish ... on the coasts of Alaska,

Washington, Oregon, and/or California." The fact that it was designed to be transported among various fish processing sites raises a substantial factual issue about its status. *Cf. Brunet v. Boh Bros. Constr. Co., Inc.,* 715 F.2d 196 (5th Cir.1983) (evidence that barge was designed to transport crane from one job site to another on a fairly regular basis raised question of barge's status as vessel in navigation). In sum, this is not a case where the facts and the law will support only one conclusion.

As an alternative to their reliance on *Kathriner,* defendants urge us to adopt a test established by the Fifth Circuit to determine whether a work platform qualifies as a vessel in navigation. *See Bernard v. Binnings Constr. Co.,* 741 F.2d 824, 831 (5th Cir.1984) (a structure is not a vessel in navigation as a matter of law if (1) it was constructed and used primarily as a work platform; (2) it was moored or otherwise secured at the time of the accident; and (3) although it was capable of movement and was sometimes moved across navigable waters in the course of normal operations, any transportation function it performed was merely incidental to its primary purpose of serving as a work platform).[2]

We have never adopted such a test, which would be in tension with our rejection in *Gizoni II* of a proposed jury instruction stating that in order to qualify as a vessel in navigation, a structure must have a non-incidental transportation function. In addition, this test is considerably

---

**1.** While the Coast Guard has granted the Lucky Buck "permanently moored status," the record reflects that it is towed to and from Alaska each year.

**2.** At least two other Courts of Appeals have considered the Fifth Circuit's approach and have adopted modified versions of it. *See Tonnesen v. Yonkers Contracting Co.,* 82 F.3d 30, 36 (2d Cir.1996) (adopting Fifth Circuit test in part but replacing first prong of test

with "whether the structure was being used primarily as a work platform during a reasonable period of time immediately preceding the accident"); *DiGiovanni v. Traylor Bros., Inc.,* 959 F.2d 1119, 1123 (1st Cir.1992) (en banc) ("if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' then workers assigned *thereto for its* shore enterprise are to be considered seamen only when it is in actual navigation or transit") (emphasis in the original).

more restrictive than the standard articulated in *Kathriner.* Even if we were to adopt the Fifth Circuit's approach, the Lucky Buck would not be precluded from vessel in navigation status as a matter of law. The fact that the Lucky Buck was constructed as a vessel "which operates in and processes fish ... on the coasts of Alaska, Washington, Oregon, and/or California" could lead to a reasonable inference that its primary intended purpose was not to serve as a stationary work platform, but rather that its value derives from the fact that it is a mobile barge capable of transporting the fish processing factory from place to place.

 Finally, defendants argue that the Lucky Buck was not a "vessel[ ] in navigation at the time of Mr. Martinez' alleged injury." It is true that the Lucky Buck had been moored for several months prior to Martinez' injury. However, this fact does not mean that as a matter of law the vessel was "out of" navigation. *Chandris, Inc. v. Latsis,* 515 U.S. 347, 373–74, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (collecting cases); *Brunet,* 715 F.2d at 199. Moreover, defendants' reliance on the relationship between Martinez and the barge is misplaced. Defendants point out that Martinez was never aboard the Lucky Buck while it was in navigation, and that there is no evidence that Martinez ever had any duties related to maintaining or moving the Lucky Buck. However, the test for whether an employee qualifies as a seaman under the Jones Act clearly separates the status of a vessel from the employee's relationship to it. *See Chandris,* 515 U.S. at 368, 115 S.Ct. 2172.

 Because the district court concluded that the Lucky Buck was not a vessel in navigation, it never reached the issue of whether Martinez' connection with the Lucky Buck is sufficient under the Jones Act to confer seaman status. While we have discretion to address an issue not raised below, including when the issue presented is purely one of law and either does not depend on the factual record developed below or the pertinent record has been fully developed, *Delange v. Dutra Constr. Co.,* 183 F.3d 916, 919 n. 3 (9th Cir.1999), we decline to do so here. The issue has never been fully briefed, even on appeal.

## CONCLUSION

For the foregoing reasons, we reverse the district court's determination that the Lucky Buck is not a vessel in navigation as a matter of law.

**REVERSED and REMANDED.**